### JESSIE THOMAS *vs.* GEORGE TRUSCOTT.

Parol evidence is not admissible to contradict or vary written contracts, or their *legal effect.*

If it becomes necessary to ascertain the subject matter to which a contract relates, and the circumstances connected therewith, for the purpose of understanding the contract, such subject matter or circumstances may be proved by parol, and such evidence is not in conflict with the rule touching parol evidence to contradict or vary written instruments.

Where the plaintiff executed a mortgage on her property, for the benefit of, and as surety for, the maker and indorser of promissory notes, and on a foreclosure of the mortgage, the indorser became the purchaser of the premises; *Held* that the plaintiff was entitled to a release and conveyance from the purchaser, of the legal title which he acquired on the foreclosure sale, upon the repayment to him of the amount of taxes and interest he had paid.

Prior to the execution of a mortgage by the plaintiff, the mortgagee held certain notes made by B. and indorsed by C. past due, upon which C.'s liability had become absolutely fixed. He and B. both desired an extension of the time of payment, and negotiated therefor. The creditor consented to grant an extension and to take new notes signed and indorsed as before, on condition that further security should be given. The plaintiff thereupon, at the request of B. gave a mortgage on her property, the condition of which was that B. should pay such notes, to which the mortgage was expressly declared to be collateral; *Held* that by this instrument the plaintiff pledged her lands as security for the debt owing to the mortgagee, and for which both B. and C. were liable; and that the referee correctly found and decided that the plaintiff made and executed the same for the benefit of, and as surety for, both B. and C. as collateral security to the notes as made and indorsed.

*Held, also,* that evidence that B. informed the plaintiff of the facts, applied to her to give the mortgage, expressing the opinion that there was no danger of her losing her property; that he thought he and C. would be able to pay the notes; and telling her how the notes were to be made, &c. was not improper; it not going to contradict or vary the terms or legal effect of the mortgage, as properly construed in the light of conceded and surrounding circumstances.

APPEAL from a judgment entered upon the direction of a referee.

On the 1st of October, 1857, The People's Exchange Bank of Wakefield, Rhode Island, held two negotiable promissory notes of $4000 each, made by Edwin Thomas, the husband of the plaintiff, and indorsed by the defendant, the brother of the plaintiff, for the accommodation

Thomas *v.* Truscott.

of the maker. These notes were past due, and the indorser had been duly charged. The referee found that Thomas and Truscott were then unable to take up the paper without inconvenience, and desired further time for payment, and they negotiated with the bank for such time, upon giving collateral security, which resulted in an agreement between Thomas and Truscott and the bank, that the notes should be renewed by substituting other notes, and that the bank should take as collateral a mortgage of the plaintiff, upon the premises in question in this action. The referee found that Thomas applied to the plaintiff and stated to her the substance of the arrangement with the bank to procure the extension of the debt; and stated to her that if she would consent to the making of the mortgage, he thought there would be no danger of her losing the property; that he thought he and the defendant would be able to pay the new paper when it became due, and that thereupon the plaintiff consented to execute, and did execute, to the bank the mortgage, her husband uniting in its execution. That before the execution of the mortgage, Thomas communicated to the defendant the plaintiff's consent to execute the mortgage, and the defendant assented to it.

Facts not disputed. There was paid on the new notes $2000; the residue was unpaid, and the defendant was charged as indorser, and the bank foreclosed the mortgage, and in August, 1860, the mortgaged premises were sold to the defendant, for a sum much less than the amount owing to the bank. The defendant then gave new notes, and mortgaged the premises as collateral security, and subsequently paid these notes, and the bank satisfied and discharged the mortgage.

The referee found and decided that the plaintiff made the mortgage to the bank for the benefit and as surety for both Thomas and the defendant, as a collateral security to notes. The evidence bearing upon this question was derived mainly from Thomas and the mortgage itself. The

objection that Thomas was not a competent witness for the plaintiff, his wife, was overruled, and the defendant excepted.

Thomas, as a witness, stated that he was not able to pay the $4000 notes when they became due, and that the defendant told him he was not able to pay, speaking of paper generally; that the defendant could not conveniently pay; that there was a negotiation with the bank, through its agents in Buffalo, to get an extension on the notes by giving further security; that the negotiation was conducted by the defendant and himself; that the witness did the principal part of it, consulting from time to time with Truscott. The arrangement was made with the agents to give new notes and for the mortgage as security. That Truscott was cognizant of the arrangement before it was consummated.

The defendant objected to any statement by the witness as to negotiations between the witness and the plaintiff, in reference to her executing the mortgage, on the ground that any answer given would tend to contradict the mortgage and other papers, and would also tend to show an agreement between husband and wife. The objection was overruled, and the defendant excepted. The witness proceeded: he represented to the plaintiff the difficulties her brother and himself were placed in, in consequence of the debt to the bank; that they could get an extension by putting in other security—a mortgage, for instance; the witness spoke to her about giving the mortgage, and told her that that would answer the purpose; told her he did not think there was any danger of her losing the property; that he thought they would be able to pay the paper; told her they could have an extension of time, his own notes to be given, indorsed by her brother, the same as before, if they could give the mortgage as security to the note; that this was the substance of what took place between the plaintiff and himself.

After he knew that the plaintiff would consent to execute the mortgage, he told the defendant of it, and the defendant assented to it, and expressed his satisfaction with the arrangement. The notes were made, indorsed and delivered, and the mortgage executed, in pursuance of the arrangement, and the old notes were taken up.

The mortgage was read in evidence by the plaintiff. It is in the usual form to the proviso, "And these presents are upon the express condition that if the said Edwin Thomas, his heirs, executors or administrators, shall and do well and truly pay or cause to be paid to the party of the second part, &c. eight promissory notes made by Thomas and indorsed by Truscott, (describing the notes,) and to which these presents are a collateral security, then these presents to cease, &c.; but in case of the non-payment of the notes," &c. The witness Thomas further stated, on his cross-examination, that at the time the extension was obtained, the defendant was liable for him on other paper, as accommodation indorser.

The referee found the fact as above stated, viz. that the plaintiff executed the mortgage "for the benefit and as surety for both said Thomas and the defendant, and as collateral security to the notes described in the condition of the mortgage." And he decided that the plaintiff was entitled to a release and conveyance from the defendant of the legal title which he acquired at the sheriff''s sale, upon the repayment to him of the amount of taxes he had paid, and the interest; and judgment was entered accordingly. The defendant filed many exceptions.

*Sprague & Fillmore,* for the plaintiff.

*Geo. B. Hibbard,* for the defendant.

*By the Court,* MARVIN, P. J. If the plaintiff executed the mortgage in question for the benefit of, and as surety

for, both Thomas and the defendant, the maker and in-dorser of the notes, then the judgment is right, and it must be affirmed, unless an exception to the admission of evidence was well taken.

The position of the defendant's counsel is that the plain-tiff became surety for Edwin Thomas solely; or that she became co-surety with Truscott, for Thomas. Thomas was a competent witness for his wife, the plaintiff.

Was it error to receive the evidence of Thomas, as to what passed between him and the plaintiff touching the giving of the mortgage?

Parol evidence is not admissible to contradict or vary written contracts, or their *legal effect.* (*Norton* v. *Coons,* 2 *Seld.* 33. *Barry* v. *Ransom,* 2 *Kern.* 462.) This rule as to legal effect is fully recognized in the latter case, but it was held not applicable to a case arising between sureties. It was held that the rule was limited to the stipulations between the parties actually contracting with each other by the written instrument. That although, in the absence of evidence, all persons becoming sureties for a common principal are held to be liable to contribution, still, one of the sureties may prove, by parol, that another surety promised to indemnify him from loss; that such evidence does not contradict or vary the terms or legal effect of the written obligation. These cases are referred to by coun-sel, but I doubt whether they are applicable to the question we are considering. If it had expressly appeared from the mortgage that the plaintiff became surety for Thomas alone, I do not think the written contract could be .con-tradicted or varied by proving that she, in fact, became surety for Thomas and Truscott. Such evidence would not be admissible. Construction is given to written in-struments in reference to the subject of the contract, and in the light of surrounding circumstances. If it becomes necessary to ascertain the subject matter to which the contract relates, and the circumstances connected there-

Thomas *v.* Truscott.

with, for the purpose of understanding the contract, such subject matter or circumstances may be proved by parol, and such evidence is not in conflict with the rule touching parol evidence to contradict or vary written instruments. (*Greenl. Ev.* §§ 277, 278, 282, 284, 287 *et seq.*)

Prior to the execution of the mortgage in question certain facts existed. The mortgagee held certain notes made by Thomas and indorsed by Truscott, past due, and Truscott's liability had become absolutely fixed; it was no longer contingent. He and Thomas were both the debtors of the bank. They both desired an extension of the time of payment, and negotiated therefor. The creditor consented to give time, and to take new notes made and indorsed as the past due notes were, in case further security should be given. These facts were communicated to the plaintiff, and she was requested to give a mortgage upon her lands, and she consented. The condition in the mortgage is, if Edwin Thomas, his heirs, &c. shall and do well and truly pay or cause to be paid to the mortgagee certain notes made by Thomas and indorsed by Truscott, specifying them, and to which the mortgage is declared a collateral security, then the mortgage to cease, &c. but in case of non-payment of any or either of the notes, &c. then the whole principal to be due, and the mortgagee may enforce payment by foreclosure.

It seems to me that by this instrument, the plaintiff pledged her lands as security for the payment of the debt owing to the mortgagee, which then existed and for which both Thomas and Truscott were absolutely liable, the time for paying the debt being extended, and its existence evidenced by the new notes, made and indorsed as the notes then held by the bank had been made and indorsed. The security was for the payment of the debt for which Thomas and Truscott were liable. True the condition refers to a payment by Thomas, but further on it is expressly declared that the mortgage is a collateral security to the notes,

which had been described as made by Thomas and indorsed by Truscott. The plaintiff's property could only be taken "in case of the non-payment of any or either of the said notes," &c. A payment of all the notes by Truscott would have relieved her property from the pledge. I do not think that Truscott could have been subrogated to the rights of the bank. It is, in my opinion, too narrow a construction to say that the defendant became surety for Thomas alone. True, as between Thomas and Truscott, the former was the principal debtor; as to the bank both were absolutely bound. The plaintiff gave the mortgage to secure the payment of the debt. I think the referee came to the correct conclusion in finding and deciding that the plaintiff made and executed the mortgage for the benefit and as surety for both Thomas and the defendant, and as collateral security to the notes, as made and indorsed.

I do not think that any error was committed in the admission of evidence. Thomas communicated to the plaintiff the facts, and applied to her to give the mortgage, expressing the opinion that there was no danger of her losing her property; that he thought they would be able to pay the paper; and he told her how the notes were to be made, and they were so made. There is nothing here contradicting or varying the terms or legal effect of the mortgage as properly construed, in the light of conceded surrounding circumstances.

The judgment should be affirmed, with costs of the appeal.

[ERIE GENERAL TERM, February 8, 1869. *Marvin, Lamont* and *Barker,* Justices.]