MARVIN R. CLARK, as Marshal, etc., Appellant, v. ALBERT G. WOODRUFF et al., Respondents.

In the interpretation of a contract of which a portion is printed and a portion written, greater weight will be given to the written than to the printed words where they are in conflict and tend to different results.

Where a bond of indemnity given to an officer can reasonably be construed otherwise, a construction will not be given to it which will make the obligors liable for trespasses which they did not direct or authorize.

Defendants obtained judgment against W. and issued execution thereon to plaintiff as marshal, who levied upon personal property to about double the amount of the execution. This property was claimed by D. & H. Defendants gave a bond of indemnity, a printed form being used; it contained a written recital of the levy and the claim of D. & H., and a printed condition to save plaintiff harmless from levying and selling under his execution "any personal property which he or they shall or may judge to belong to the judgment debtor." A portion of the property levied on which was not in fact the property of W. was taken from plaintiff's possession by some person unknown; upon his reporting the eloignment to the defendants they notified him that they should hold him responsible for the levy. Plaintiff thereafter, without the authority, knowledge or consent of defendants, levied upon and sold other property, the proceeds of which he paid to defendants who received it without any knowledge of such new levy. An action was brought by S. against plaintiff for such levy and sale and judgment recovered against him. In

an action upon the bond, *held*, that it was intended simply to furnish indemnity for the levies already made; that its terms did not enlarge plaintiff's authority, and the subsequent unlawful levy and sale was made entirely at his risk, and that defendants were not liable.

Also *held*, that the receipt by the defendants of the proceeds of the sale in ignorance of the facts was not a ratification; and that they were not affected by knowledge upon the part of their attorney, as he had no authority to bind them by directing a trespass or by ratifying one when committed.

*Newberry* v. *Lee* (3 Hill, 523), *Armstrong* v. *Dubois* (1 Abb. Ct. App. 11), *Stewart* v. *Wells* (6 Barb. 79), *Barker* v. *Braham* (3 Wils. 396), *Bates* v. *Pilling* (6 B. & C. 38), and *Brown* v. *Feeter* (7 Wend. 301), distinguished.

(Argued December 22, 1880; decided January 18, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made September 1st, 1879, affirming a judgment in favor of defendants entered upon the report of the referee. (Reported below, 18 Hun. 417.)

This action was brought by plaintiff upon a bond of indemnity executed by the defendants to the plaintiff, as marshal, which bond is as follows:

"Know all men by these presents, that we, Albert G. Woodruff, Francis J. Morris and Charles Morgan, are held and firmly bound unto Marvin R. Clark in the sum of one thousand dollars, lawful money of the United States, to be paid to the said Clark, or to his certain attorney or attorneys, executors, administrators or assigns, for which payment, well and truly to be made, we bind ourselves, our and each of our heirs, executors and administrators, jointly and severally, firmly by these presents.

Sealed with our seals. Dated the 16th day of March, in the year one thousand eight hundred and seventy-five.

Whereas, the above bounden Woodruff, Morris and Morgan did obtain judgment in the Marine Court against H. W. Webber, whereupon execution has been issued, directed and delivered to the said Clark, requiring him, out of the personal property of the said judgment debtor, to satisfy the judgment aforesaid;

And whereas, certain personal property that appears to belong to the said Webber is claimed by one Dickson, and also one Hunt;

Now, therefore, the condition of the above obligation is such, that if the above bounden Woodruff, Morris and Morgan shall well and truly save, keep and bear harmless, and indemnify the said Clark, and all and every person and persons aiding and assisting him in the premises, of and from all harm, let, trouble, damage, liability, costs, counsel fees, expenses, suits, actions, judgments, special proceedings and executions, that shall or may at any time arise, come, accrue, happen or be brought against him, them or any of them, as well for the levying and making sale under and by virtue of such execution, of all or any personal property, which he or they shall or may judge to belong to the said judgment debtor, as well as in entering any shop, store, building, or other premises, for the taking of any such personal property, then this obligation to be void, otherwise to remain in full force and virtue.

Sealed and delivered in the presence of

> WOODRUFF, MORRIS & CO. [L. S.]
> FRANCIS I. MORRIS. [L. S.] "

A printed form was used for the bond; the recitals were written therein; the facts and circumstances under which the bond was given are set forth in the opinion.

*Edward P. Wilder* for appellant. To alter a contract on the ground of mistake it must be shown that both parties to it understood it as it was alleged it ought to have been. (*Lyman* v. *Utica Ins. Co.*, 17 Johns. 373; *Nevins* v. *Dunlap*, 33 N. Y. 676, 680; *Jackson* v. *Andrews*, 59 id. 244; *Boardman* v. *Davidson*, 7 Abb. [N. S.] 439; *Pennell* v. *Wilson*, 2 id. 466; *Botsford* v. *McLean*, 42 Barb. 445; *Dambman* v. *Schulting*, 7 N. Y. Weekly Dig. 570–1; *Miaghan* v. *Hartford Fire Ins. Co.*, 12 Hun, 321; *Moran* v. *McLarty*, 11 id. 66; *Wheaton* v. *Fay*, 62 N. Y. 275; *Armstrong* v. *Dubois*, 1 Abb. Ct. App. 11.) Plaintiff's acts were directed or ratified by defendants after giving him the bond. (*Stewart* v. *Wells*, 6 Barb. 79;

*Newberry* v. *Lee*, 3 Hill, 523 ; *Barker* v. *Braham*, 2 Wils. 396 ; *Bates* v. *Pilling*, 6 Barn. & C. 38 ; *Brown* v. *Feeter*, 7 Wend. 301.)

    *John Brooks Leavitt* and *L. B. Bunnell* for respondents. By the bond of indemnity defendants did not authorize nor indemnify against the Harlem levy. (*Griffin* v. *Hardenburg*, 41 N. Y. 464; *Blossom* v. *Griffin*, 13 id. 569.) An excessive levy is a trespass, for which the execution debtor may sue the officer. His writ is no protection to him, for he does not levy by virtue of it, as it only commands him to levy upon sufficient to satisfy it. (*Hoyt* v. *Hudson*, 12 Johns. 206 ; *Ladd* v. *Blunt*, 12 Mass. 403 ; *McChain* v. *Duffy*, 2 Duer, 647 ; *Green* v. *Brook*, 23 Wend. 490 ; *Ostrander* v. *Wilder*, 2 Hill, 329 ; *Dempsey* v. *Fox*, 22 Barb. 522 ; *Merriweather* v. *Nixon*, 8 Term R. 186; *Peck* v. *Ellis*, 2 Johns. Ch. 137; *Coventry* v. *Barton*, 17 Johns. 142 ; *Holman* v. *Johnson*, Cowp. 341; *Griffin* v. *Hardenburg*, 41 N. Y. 464 ; *People* v. *Mayor*, 19 How. 293 ; 2 Cowen's Treatise, 538 ; Crocker on Sheriffs [2d ed.], Forms Nos. 174, 177, p. 564 ; *Curtis* v. *Patterson*, 8 Cow. 65 ; *Sullivan* v. *Anderson*, 19 Johns. 233.) The written part of the bond is to prevail over the printed part. (*Hill* v. *Miller*, 76 N. Y. 32.) What the attorney in this case knew and did would not make defendants liable to Sarah Hunt. (*Welsh* v. *Cochrane*, 63 N. Y. 181, 185 ; *Averill* v. *Williams*, 1 Den. 501; *S. C.*, 4 id. 295 ; *Olstreck* v. *Gilbert*, 9 Hun, 242.) There was no ratification. (*Wilson* v. *Tumman*, 6 M. & G. 240; *Hyde* v. *Cooper*, 26 Vt. 526 ; *Adams* v. *Freeman*, 9 Johns. 117.) The indorsement of a debtor's address upon an execution is no direction whatever to execute the writ against any person or property, but simply information to the officer where to find defendant. (Addison on Torts, § 1187 ; *Children* v. *Wooler*, 29 L. J. [Q. B.] 129 ; *Cronshaw* v. *Chapman*, 7 H. & N. 911 ; *Yale* v. *Dederer*, 68 N. Y. 333.)

    FINCH, J. The condition of the bond given to the marshal is differently construed by the opposite parties. The officer

relies upon its express language and literal terms, and insists that its protection for a levy upon or sale of any property which he " shall or may judge to belong to the said judgment debtor," covered all his acts previous to the execution of the bond, and his levy made thereafter upon the goods in the Third avenue store. Assuming, as the referee has found, that this last levy was made without the knowledge or authority of the defendants, the interpretation of the marshal is that he had the right to make any further levy he pleased upon the basis of his own sole judgment, and the bond would cover the consequences. The construction asserted by the defendants is that the bond was an indemnity to the officer only as against the levies already made, or such others as the defendants should specifically authorize and request, and they reach this construction not by contradicting or modifying the written language of the instrument, but by interpreting that language in the light of the surrounding circumstances, and so ascertaining its actual and real meaning. The written recital in the bond and the printed clause in the condition point in different directions. The one plainly refers to levies already made, and the known adverse claims to the property of " one Dickson " and " one Hunt " and so indicates an understood intention on both sides to indemnify the officer against the consequences of levies already made, and the claims of known and expected adversaries. The printed condition has a much broader scope, and indicates an intention to protect the officer in making any future levies upon property " which he may judge " belongs to the debtor in the execution. This ambiguity it was proper to solve by throwing upon the language used the light of surrounding circumstances. That is a rule of interpretation merely, and does not permit the making of a new contract, or a reformation of it, or a disregard of its terms. It authorizes only a just construction of those terms and a fair inference as to the common understanding of both the contracting parties. (*Blossom* v. *Griffin*, 13 N. Y. 569; *Griffiths* v. *Hardenberg*, 41 id. 468; *Thomas* v. *Truscott*, 53 Barb. 200 ; *Liddle* v. *Market Fire Ins. Co.*, 4 Bosw. 179.) Resort may also be had to the further rule that in the inter-

pretation of the language of an instrument, greater weight should be given to the written than to the printed words, where they lead different ways, and tend to contrary results. (*Hill* v. *Miller*, 76 N. Y. 32; *Harper* v. *The Albany Mutual Ins. Co.*, 17 id. 194; *Benedict* v. *Ocean Ins. Co.*, 31 id. 397.) The language of printed blanks is easily assumed to be appropriate, without careful examination, while the written words more safely and more nearly indicate the intention of the contracting parties. Founded upon these two rules, the defendant's interpretation prevailed before the referee and received the approval of the General Term. In reviewing their conclusion, as to some extent involving a question of law, we must assume the facts as found by the referee so far as they are founded upon some evidence tending to the conclusion reached.

The general facts are these: That the defendants, having obtained a judgment against one Webber, caused an execution against his property to be issued to the marshal, and indorsed thereon for the latter's information three addresses of the debtor, viz., one on Sixth avenue, one on Broadway, and one on Third avenue; that the defendants' judgment was for $289, and the marshal, by virtue of his execution, on the 2d day of March, 1875, levied upon the goods in the Sixth avenue and Broadway stores, and which were estimated to be worth $700, and, therefore, amply sufficient to satisfy the execution; that the goods in the Sixth avenue store were, soon after the levy, claimed by one Dixon as owner, and those in the Broadway store by Barbara Ann Hunt; that the marshal notified the defendants of his two levies, and of the hostile claims, and required an indemnity, whereupon the bond in question was executed; that it was so executed and delivered on the 16th day of March, 1875, and its tenor and effect were well known to the marshal, but it was understood by the defendants to protect the marshal for acts done by him thereafter, under their authority; that the property in the Sixth avenue store was, on the night of the 16th of March, eloigned and taken from the marshal's possession by some person unknown, but the property so eloigned was not in fact the property of Webber; that, upon the marshal's re-

porting to the defendants the eloignment of the property in the Sixth avenue store, they notified him that they should hold him responsible for his levy ; that the marshal thereafter, without the authority, knowledge or consent of the defendants, and on the 29th of March, levied upon and afterward sold the goods in the Third avenue store ; that he paid over the proceeds of such sale to the defendants, but the latter received the same without any knowledge of the levy or sale at the Third avenue store ; .that on the 25th of March, the marshal was sued for such levy and sale by one Sarah P. Hunt, who recovered a judgment against him of $519.95 damages and costs. On this state of facts the referee held that the bond did not protect the marshal in his last levy and sale; that the terms of the instrument did not enlarge his authority in respect to his duty ; that no levy having been made on the property in the Third avenue store when the bond was given, it must be presumed that it was not the intention of the parties to give or require indemnity for such last levy and sale; that having been made without defendant's knowledge or authority, the proceedings were wholly at the marshal's risk, and the defendants were not liable on their bond. It seems very apparent, when we study the situation, that, at the date of the delivery of the bond, neither party contemplated any further levies, or any additional risks beyond those already made and assumed. On an execution for less than $300 the marshal had seized property valued at more than twice that amount. Assuredly he contemplated no further levies, for his duty was done and he only needed protection against the adverse claimants. With full knowledge of the existing facts the bond was given. It recites the claims already made by " one Dixon " and " one Hunt," and was plainly intended to furnish indemnity for the levies already questioned. Evidently, at that time, nothing more was asked on the one hand, or intended to be granted on the other. The common intent and mutual understanding were the same. When, therefore, the marshal, after the goods in the Sixth avenue store had been eloigned, and he had been notified that he would be held responsible by the de-

fendants for their value, levied on the property in the Third avenue store, without their knowledge or consent, he was acting at his own risk, for his sole benefit, and assuming a responsibility which he well knew was beyond the purpose and intent for which the bond was asked or given. Any other construction would operate as a fraud upon the defendants. Literally construed it would make them responsible for trespasses which they did not direct and could not prevent. No such construction of the indemnity is necessary. All its language is satisfied when applied to the first two levies, and is in harmony with the common intention. It is never the purpose of these indemnities to make the obligors responsible for trespasses which they do not direct or authorize. We should not yield to such a construction. The mischiefs resulting would be very great, not only to the parties and to the public, but to the officers themselves.

. It is argued, however, that this interpretation rests upon the understanding of one of the parties and not of the other, and that the marshal acted on the faith of the bond " as it is." That is a mistake in both respects. There is no more doubt that the marshal understood this bond, when he took it, to relate wholly to the existing levies and claims, than there is that the defendants so understood it. What he did afterward was not on the faith of the bond " as it is," but as he hoped it would prove to be. He possibly thought it would bear a construction which would enable him, by an adroit stratagem, to shift upon the defendants themselves the burden of their own threat to hold him responsible for his lost levy.

It is further argued that the levy on the Third avenue store was ratified by the defendants. That they received the proceeds of that levy is true, but it was done in ignorance of the fact. It is claimed that their attorneys knew. That is so found by the referee. But the fact does not affect the defendants. Their attorney, as such, had no authority to bind them by directing a trespass or by ratifying one when committed. ·(*Welsh* v. *Cochran*, 63 N. Y. 181; *Averill* v. *Williams*, 4 Den. 295.) He was not the agent of the defendants for any

such purpose, and could not bind them. Indeed, if we take his version of the transaction, which is most natural and reasonable and given with apparent frankness and sincerity, and corroborated by his clerk, there was not only no authority given to the marshal to make the levy in dispute, or any ratification of it when made, but on the contrary a distinct notification to the officer that he would be held responsible for the lost levy, and if he chose to protect himself by a further levy at the Third avenue store he must do so at his own sole risk. When after this the attorney received the money he had the right to assume that so far as it came from the Third avenue goods it had been collected by the officer at his own risk, and was paid for his own protection. The proof falls far short of any thing like a ratification. If it approached such a result more nearly, it would still be confronted by the difficulty that the acts of the attorney did not affect the defendants. The cases on this subject cited by the appellant (*Newberry* v. *Lee*, 3. Hill, 523; *Armstrong* v. *Dubois*, 1 Abb. Ct. App. 11; *Steward* v. *Wells*, 6 Barb. 79; *Barker* v. *Brahan*, 3 Wils. 396; *Bates* v. *Pilling*, 6 Barn. & C. 38; *Brown* v. *Feeter*, 7 Wend. 301) were all cases in which by some act or direction the party had connected himself with the trespass, and thereby made the attorney his agent for the specific purpose.

The question in the case, therefore, comes back to the construction of the bond. We do not overlook the suggestion of the learned counsel for the appellant, that, giving the rules of interpretation from surrounding circumstances the freest play, it is still apparent that the bond was intended to cover the seizure of the goods in the Third avenue store. He argues that before the execution of the indemnity the marshal *supposed* he had levied on those goods, and so reported to defendants' attorneys. All that he did, as the basis of his alleged supposition, was to go into the store and look around. It taxes credulity to believe that he thought that a levy, and the referee refused to find any such fact. The attorney also denies emphatically that he was told by plaintiff before the

delivery of the bond that he, the plaintiff, had been to the Third avenue store.

We can see no ground, therefore, upon which the plaintiff can rest his case, except a literal and rigid construction of the printed language of the bond. This court has never been unduly swayed in that direction. Our adjudications upon printed forms of insurance policies, and blanks used by carriers to shield their own negligence, rest upon rules of interpretation which may justly be applied to the broad and sweeping terms of official bonds like the one in question. The real and just meaning, and the fair and understood intention, are the only safe guides where the language is open to a doubt. These views cover substantially all the material questions raised on the appeal.

The judgment should be affirmed, with costs.

All concur except RAPALLO, J., who did not vote; FOLGER, Ch. J., concurring in result.

Judgment affirmed.