McAdam, C. J.
—The action is upon a policy of insurance issued by the defendant] whereby it agreed to pay to the person or persons designated in the fifth condition thereof $188, upon receipt of proofs sufficient to the company of the death of Joseph F. Mahoney, the person insured. The proofs were furnished, and as they proved satisfactory to the defendant, it is immaterial whether they were furnished by the beneficiary or by the widow of the deceased. The fifth condition above referred to is printed, and reads as follows:
“ The production by the company of this policy, and of a receipt for the sum assured, signed by any person furnishing proof satisfactory to the company that he or she is the beneficiary, or an executor or administrator, husband or wife, or relation by blood, or connection by marriage of the assured, shall be conclusive evidence that such sum has been paid to and received by the person or persons lawfully entitled to the same, and that all claims and demands upon said company under this policy have been fully satisfied.” The policy recites the application therefor, and makes it part of the contract. Subdivision 9 of the application is as follows:
*666 “ Name and relationship of person to whom benefit is to be paid” (printed); Catharine Carraher (written); “Relation” (printed); guardian (written). Treating this application as part of the contract, the plaintiff is named therein as beneficiary, and being especially designated as the person to whom the insurance is to be paid, a payment to any one else does not satisfy the requirements of the policy. The mere fact that the wddow furnished the proof of death does not authorize a payment to her. The terms “ husband and wife, or relationship by blood, or connection by marriage of the assured,” used in the fifth condition of the policy are general in their nature and yield to and are controlled by that portion of the contract containing the special designation of a particular beneficiary. Thus, general expressions used iñ a contract are controlled by the special provisions therein (Story on Cont., §§ 641 a, 642, 643; and see Elmendorf v. Lansing, 4 John. Ch., 562; Van Hagen v. Van Rensselaer, 18 Johns., 420), and the written parts of a policy control the printed parts wherever the two conflict. Clarke v. Woodruff, 83 N. Y., 518; Chadsey v. Guion, 97 id., 333.
The payment to the widow of the deceased being unauthorized by the plaintiff, or by the terms of the policy, constitutes no defense to the action. The term ‘ ‘ guardian ” after the word “relation” in the application has no significance in this case. The applicant was twenty-four years of age and in sound health at the time of making the application. It was known to all that the plaintiff could not have been the guardian of the applicant in the legal, but rather in the popular sense of that term, which means “ one who guards, preserves or secures.” (Webster’s Diet.) The plaintiff kept a boarding-house, and the applicant boarded with her, and in this limited sense, she “guarded, preserved and secured” him. The term as used in the application means this or nothing. The loss was payable to the plaintiff, and the action was properly brought in his individual name.
The contract made cannot be regarded as a mere wager policy. The plaintiff -did not procure the insurance to be made; Mahoney did this himself, and this is an important feature to be considered, for while one cannot insure a life in which he has no interest (Ruse v. Mutual B. L. I. Co., 23 N. Y., 516), any person can insure his own life, and make the policy payable to any person he may name therein. Such a policy is valid, whether the payee have any pecuniary interest in the fife insured or not. Olmsted v. Keyes, 85 N. Y., 598; Bliss on Life Insurance, § 26; Hogle v. Guardian Ins. Co., 4 Abb. (N. S.), 346. This disposes of the objection made to the absence of any pecuniary insurable *667 interest on the part of the plaintiff in Mahoney’s life. Why he named the plaintiff as beneficiary instead of his -wife is unknown. The act, however, is indicative of a single purpose, to wit: that the insurance, in the event of his death, was to go to the plaintiff, and to no one else. What interest she had in his welfare and what there was to lose in the event of his death, has not been made to appear. The policy may have been made payable to induce credit at her boarding house. The fact, however, has neither been alleged nor proved, yet its existence is a rair inference to be drawn from the relationship and acts of the parties. The jury having found the facts adversely to the defendant, and there being no legal defense, for the reasons stated, there must be judgment on the special verdict for $195, the amount claimed, and interest.
McAdam, Ch. J.
—Since filing my opinion herein, my attention has been called to the opinion, recently delivered by the supreme court of New Jersey in Metropolitan Life Ins. Co. v. Schaffer (not yet reported). In that case, the son was the beneficiary named, but it did not appear that the son ever had possession either of the policy or the premium receipt book, or that he ever knew of the existence of the policy until after the death of the assured.
In the present case, the policy was delivered to the beneciary (the plaintiff). She paid the premums thereon, and she gave notice of the death of the assured, and surrendered the policy and premium book to the company, accompanied by a demand for payment.
The plaintiff here had a vested interest in the policy. In the Schaffer Case the son never acquired a vested interest therein. The payment to the daughter, under the peculiar circumstances of the Schaffer Case, was valid. The payment to the widow in the present case unauthorized. Condition five of the policy operated in the Schaffer Case as an appointment, so that any of the persons enumerated therein (being sui-generis) were authorized to receive payment of the sum agreed to be paid.
But it can hardly be seriously contended that with knowledge of the fact that the beneficiary especially named in the contract had possession of the policy and premium receipt book, had kept alive the contract, and personally claimed the moneys agreed to be paid thereunder, that the company could disregard her claim, and, in apparent defiance of it, arbitrarily select one of the other persons enumerated in article 5, as the proper beneficiary, so as to make a payment, to the one so favored, binding in law against the prior claim of the beneficiary especially named in the policy. Article 5 was evidently intended to enable *668 the company to settle with the person having possession of the contract on which the claim arises, with the apparent right to the money, and .to protect the company, after paying in good faith to one of the persons enumerated in article 5, from any future claim on the part of any one else. This may be just where such a construction of article 5 is necessary to further its design and intent, but it would be a most unjust interpretation to place on that article, under the circumstances of this case, to hold, it was contemplated by the parties, that the company might ignore the prior claim of the beneficiary especially named in the contract, take from her the policy and premium receipt book, reject her demand for payment, and then arbitrarily select another as the recipient of the benefit the assured had designed for her. This, too, in face of the fact that she had kept alive the policy by payments of premiums, to the end that her claim might, in the event of death, be made productive to her.
With the highest respect for the New Jersey supreme court, and for all it decided, I cannot believe its construction of article 5 was intended to be so far-reaching in its results as to embrace within it the question under article 5, in the form in which it arises in the present instance.
The direction already made must stand.