## RICHARDS *v.* CROCKER *et al.*

*(Supreme Court, General Term, Fourth Department.* November, 1892.)

1. **TRUST DEED—CONSTRUCTION—ESTATE CONVEYED.**
   A father gave to each of three sons an undivided fourth interest in his farm, and by a separate deed, for a nominal consideration, conveyed to defendant, one of the sons, the remaining fourth, with all the grantor's right, title, and interest therein, in trust to receive the rents and profits and apply them to the use of another son, who was of feeble mind, during the latter's life. At the same time all four sons executed papers by which annuities were secured their father and sisters. The trust deed was on a blank form, the granting part being printed, while the trust clause was written. Subsequently a partition deed of the land was executed by the father and sons, and the portion now claimed by plaintiff was set off to defendant, as trustee for his brother, to hold on the trusts set forth in the previous deed, and later the father conveyed to plaintiff this portion, subject to the life interest of his feeble-minded son. *Held,* that the deed did not give defendant a beneficial interest on his brother's death, but that the property then passed to plaintiff as the father's grantee.

2. **EVIDENCE—PAROL TO VARY WRITING—PURPORT OF DEED.**
   Plaintiff having brought an action for possession after the death of the life tenant, defendants offered evidence that at the time of the partition plaintiff, who was not a lawyer, said in the presence of all the parties to the partition that on the death of the life tenant defendant would be the sole owner of the property in suit. *Held,* that this evidence was inadmissible to vary or change the legal effect of the trust deed previously made, or to show the intention of the parties to that deed, or the deed of gift to the three brothers.

3. **ESTOPPEL—STATEMENTS AS TO TITLE—EFFECT.**
   Such statement by plaintiff, not being fraudulently made, did not estop plaintiff from claiming under the subsequent deed to him from the father.

4. **WITNESS—COMPETENCY—TRANSACTIONS WITH DECEDENT.**
   Under Code Civil Proc. § 829, prohibiting a party or person interested in an action from testifying in his own behalf, against one claiming under a deceased person, as to any personal transaction or communication with the decedent, neither defendant nor his brother, to whom a portion of the land would descend in case plaintiff's deed was held invalid, could testify as to the condition of defendant's father, since deceased, at the time he made the deed under which plaintiff claimed.

5. **EJECTMENT—PLEADING—DAMAGES.**
   Where a complaint in an action for possession of real estate asks damages for withholding the possession, though it does not aver any damage, plaintiff may recover the value of the use and possession of the property from the commencement of the action. *Olason v. Baldwin,* 29 N. E. Rep. 226, 129 N. Y. 183, followed.

Appeal from circuit court, Broome county.

Action by Dan S. Richards against Levi Crocker and Jesse Robinson to recover possession of certain real estate. From a judgment for plaintiff, entered on the decision of the court, a jury trial having been waived, defendants appeal. Affirmed.

The action was to recover the possession of certain real estate situated in the town of Union, Broome county, N. Y., known as the westerly portion of Crocker's island, and containing about 17⅓ acres of land. Prior to April, 1852, the premises, of which those in question formed a part, were owned and occupied by Samuel Crocker. On the 7th day of April, 1852, he executed and delivered to his three sons Elias, Eli, and Levi a deed which conveyed to each an undivided one-fourth part of his farm, which contained about 80 acres of land, including the portion of the island belonging to him. At the time of the execution of the deed to his sons Elias, Eli, and Levi, he also executed and delivered to Levi Crocker, one of the defendants in this action, a deed of the remaining undivided one fourth of his farm, the material provisions of which deed were "that the said party of the said first part, [Samuel Crocker,] for and in consideration of the sum of one hundred dollars, lawful money of the United States, to him in hand paid by the said party of the second part, [Levi Crocker,] at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted bargained, sold, aliened, remised, released, conveyed, and confirmed, and by

these presents doth grant, bargain, sell, alien, remise, release, convey, and confirm, unto the said party of the second part, and to his heirs and assigns, forever, all that one equal undivided fourth part of all that piece or parcel of land situate in the town of Union, [which is therein described by metes and bounds,] the said party of the first part hereby reserving to himself, during his natural life, the use of two square rooms of the first story, consisting of kitchen and bedroom, the privilege of the cellar and of cutting necessary fuel on the above premises, together with, all and singular, the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits, thereof, and also all the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in, or to the above-described premises, and every part and parcel thereof, with the appurtenances, to have and to hold, all and singular, the said hereinbefore granted and described premises, with the appurtenances, unto the said Levi Crocker, upon the trusts, nevertheless, and to and for the uses, interests, and purposes hereinafter limited, described, and declared; that is to say, upon trust to receive the issues, rents, and profits of the said premises, by leasing or otherwise, and apply the same to the use of Hiram Crocker during the term of his natural life, as follows: *First*, the said Levi Crocker shall pay the annual annuity to the party of the first part during the term of his natural life, according to the requirements and conditions of a certain bond and mortgage this day executed by the said Hiram Crocker to the party of the first part; *secondly*, pay the one-fourth part of a certain bond and mortgage executed this day by Levi Crocker, Elias Crocker, Eli Crocker, and Hiram Crocker. The said rents, issues, and profits of the said premises, or so much thereof as shall be necessary, shall be applied to the use and benefit of the said Hiram Crocker, as aforesaid, and for his use and benefit, during the term of his natural life." At the same time a bond and mortgage were executed by Eli, Levi, Elias, and Hiram Crocker to their sisters, to secure the payment to them of the sum of $800, and also a bond and mortgage to Samuel Crocker, executed by Eli, Elias, Levi, and Hiram, to secure to Samuel the payment of an annuity from each of $35.71, for and during the term of his natural life.

About one year after the execution and delivery of the deeds already mentioned, and on the 12th and 13th of May, 1853, a partition deed was executed by Elias Crocker and wife, Eli Crocker and wife, Levi Crocker and wife, Samuel Crocker, and Hiram Crocker, by which the farm in question was partitioned between the parties. By such partition the portion of the premises described in the complaint was set off to Levi Crocker as trustee for Hiram, to be held by him for the uses and purposes set forth in the foregoing deed. Subsequently, and on the 10th day of October, 1855, in consideration of $150 that day paid him by the plaintiff, Samuel Crocker executed, acknowledged, and delivered to the plaintiff a deed or instrument in writing, under seal, of which the following is a copy: "Know all men by these presents, that I, Samuel Crocker, of the town of Union, Broome Co., New York, have bargained and sold, and by this instrument do convey, unto Dan S. Richards, of the said town, and to his heirs and assigns, forever, in consideration of the sum of one hundred and fifty dollars to me in hand paid, the receipt whereof is hereby acknowledged, all that certain piece or parcel of land commonly called the 'Crocker Island,' situate in the Susquehanna river, in the said town of Union, and which is nearly opposite lot No. two hundred and eighteen in the Chenango township of the Boston purchase, and also nearly opposite the Choconut creek, which runs into said river, through the lands of Jesse Richards, from the north; excepting from this conveyance, however, about three or four acres from off the upper end of said island, now owned

by Benjamin Chambers. This conveyance is made subject to the life interest of Hiram Crocker in said island, which was created by a deed of trust to Levi Crocker, of date about April 8, 1852, which deed is recorded in Broome county clerk's office, in Book of Deeds No. 37, page 431, and as recreated or modified by a partition deed by Samuel Crocker, Hiram Crocker, Levi Crocker, Eli Crocker, and Elias Crocker, which is recorded in Broome county, Book of Deeds No. 40, page 258, by which deed the property held in trust by Levi for Hiram was partitioned off and shifted from that mentioned in the deed of April, 1852, to the island herein mentioned, which then became and now is the property which Levi holds in trust for Hiram, with a remainder over to me. This deed is intended to convey my remainder and the fee to said island, subject only to said Hiram's life interest." No consideration appears to have been given for the deeds from Samuel to his sons Levi, Elias, and Eli, and to Levi as trustee for Hiram, except the payment of the annuity and debt mentioned in the two mortgages given, one to Samuel Crocker and the other to his daughters. Hiram Crocker died in the month of February, 1890. This action was commenced on the 17th of April, 1890. In the month of April, 1890, the defendants were in the possession of that portion of the island which is described in the deed to the plaintiff, except a portion acquired by the New York, Lackawanna & Western Railroad Company. Before the commencement of this action, and in said month of April, the plaintiff demanded possession of the premises of the defendants, which was refused, and the plaintiff was excluded from the possession thereof, and his right therein denied; the defendants claiming that the defendant Crocker was the owner in fee, and the defendant Robinson his tenant. The value of the use and occupation of the premises claimed by the plaintiff, which the defendants withhold from him, from the commencement of the action to the time of the trial, was $75.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Millard & Stewart,* for appellants. *D. S. & R. B. Richards,* for respondent.

MARTIN, J. A deed by Samuel Crocker to Levi Crocker of one fourth of his farm, in trust to receive the rents and profits of the land, and apply them to the use of Hiram during his life, would have been valid. Rev. St. pt. 2, c. 1, tit. 2, art. 2, § 55. If such was the character of the deed given, then Levi held the premises as a trustee of a valid, express trust, and the title to the premises vested in him, and not in Hiram; but Samuel still possessed the right to grant or devise the land, subject to the execution of the trust. Sections 60, 61. When the purposes for which the trust was created ceased, the estate of the trustee ceased, and the estate conveyed to the trustee, and not granted by him, reverted to the grantor, his heirs, devisees, or those claiming under him, to the same effect as though such trust had not been created. Section 67. If, therefore, the deed from Samuel to Levi conveyed the premises to the latter, in trust to receive the rents and profits thereof and apply them to the use of Hiram during his life, upon the termination, by the death of Hiram, of the purpose for which the trust was created, the estate in Levi ceased, and the title reverted to the plaintiff, as the grantor of Samuel Crocker. Whether the deed from Samuel to Levi conveyed to the latter the premises, in trust to receive the rents and profits thereof and apply them to the use of Hiram during the term of his natural life, or whether it conveyed to him (Levi) the absolute fee in the premises, is the real question to be determined in this case. In construing this deed it is our duty to carry into effect the intent of the parties, so far as it can be collected from the whole instrument. Such is the mandate of the statute, (Rev. St. pt. 2, c. 1, tit. 5, § 2,) and such the rule which must be applied in this case, (*Bank* v. *Holden,* 105 N. Y. 418, 11 N. E. Rep. 950.) "The intent, when apparent, and not repugnant to any rule of law, will control technical terms, for the

intent, and not the words, is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect." 2 Devl. Deeds, § 837; *Coleman* v. *Beach*, 97 N. Y. 545. Where a contract is partly printed and partly in writing, the written matter must prevail over the printed, in case of a conflict between them. *Hill* v. *Miller*, 76 N. Y. 32; *Clark* v. *Woodruff*, 83 N. Y. 518. If a deed contain a clause clearly showing the intention of the parties, ambiguities and inconsistencies in other clauses will not defeat such intention. *Bent* v. *Rogers*, 137 Mass. 192. The circumstances connected with the transaction, and the situation of the parties, may be considered in arriving at their intent, (*French* v. *Carhart*, 1 N. Y. 96; *Field* v. *Munson*, 47 N. Y. 221; *Bridger* v. *Pierson*, 45 N. Y. 601;) and regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view, (*Clark* v. *Devoe*, 124 N. Y. 120, 26 N. E. Rep. 275.)

By the deed under consideration the grantor conveyed to the grantee, his heirs and assigns, forever, an undivided one fourth of the premises described, with all the grantor's right, title, and interest therein, to have and to hold the same unto the grantee, "upon the trusts, nevertheless, and to and for the uses, interests, and purposes, hereinafter limited, described, and declared; that is to say, upon trust to receive the issues, rents, and profits of the said premises, by leasing or otherwise, and apply the same to the use of Hiram Crocker during the term of his natural life." In preparing this deed a printed blank form of deed was used. The portion constituting the grant was printed, while the part declaring the uses and purposes for which it was given was written. The evidence shows also that when this deed was given the grantor was the owner of the whole of the premises described, which contained about 80 acres of land; that he deeded to his three sons Eli, Levi, and Elias each an undivided one-fourth part thereof; and that his son Hiram was then feeble in intellect or diseased in mind. The circumstances disclose an intent and purpose on the part of the grantor to make provision for his four sons: For Eli, Levi, and Elias, by deeding to each an undivided one fourth of his farm, subject to the payment to him of a certain annuity and an equal portion of a mortgage thereon. Having thus disposed of three fourths of the farm equally between the three, he then evidently intended to provide for his more unfortunate son by transferring the remaining one fourth to Levi, in trust to receive the rents and profits and apply them to the use of Hiram, who was incompetent to care for himself, and not to convey to Levi another one fourth of the premises in fee. That the chief and only purpose of the grantor in conveying the one fourth transferred to Levi in trust was to devote the rents thereof to the use of Hiram, is, we think, quite obvious. We find no sufficient evidence in the deed or elsewhere to justify the conclusion that the grantor either intended to transfer the premises to Levi absolutely in fee, free from any trust in Hiram's favor, or that he intended that Levi should acquire an absolute title, subject to a trust to receive and expend the rents and profits thereof for Hiram's benefit during his life. Applying to this deed the rules relating to the construction of written instruments, to which attention has been called, considering the situation of the parties, the manifest object that the grantor had in view when it was given, giving proper effect to the written portion, and considering all its provisions, we are led irresistibly to the conclusion that the purpose and intent of the deed was to convey to Levi a one-fourth part of the premises, in trust to receive the rents thereof, and use them for the benefit of Hiram during his life, and that there was no intent to convey to him any other or greater estate therein. The mere fact that the clause in the deed showing that it was intended as a deed in trust for the purposes mentioned was in the *habendum* clause was not, we think, material in determining the intent. *Phœnix Ins. Co.* v. *Continental*

*Ins. Co.*, 87 N. Y. 401. We are therefore of the opinion that the convey-
ance to the defendant Levi Crocker in trust for the use of Hiram passed to
Levi, as such trustee, an estate in the premises during the life of Hiram;
that upon his death the title reverted to the plaintiff as Samuel Crocker's
grantee; that the farm having been partitioned by the deed to which all the
persons then interested in the lands were parties, the partition as thus made
is binding upon them and their grantees; and that the plaintiff was entitled
to the possession of the premises in question when this action was commenced.

On the trial the defendants offered to prove by the testimony of the defend-
ant Crocker that, when the premises were partitioned, the plaintiff, in the
presence of all the parties to the partition, told the defendant Crocker that he
would be the sole owner of the property in question after the death of Hiram.
This was objected to as "immaterial and incompetent, and the rights of the
parties are fixed by the written instrument; that parol evidence cannot be
given to vary or contradict the terms of this instrument, or change their legal
effect, or affect any rights Mr. Richards subsequently acquired under his deed
from Samuel Crocker; and, also, the matter is collateral, and not evidence,
and cannot be given to contradict Mr. Richards on any matter brought out in
cross-examination by defendants' counsel." This objection was sustained,
and the defendants excepted. "*Defendants' Counsel.* Now, I put the same
question, and for another purpose, viz., to show the intention of all the parties,
the grantor being present at the time the paper was executed. (Objected to,
on the ground that the intention of the parties must be gathered from their
language as embodied in the written instruments. Objection sustained. De-
fendants except.) *Defendants' Counsel.* Mr. Richards is plaintiff in this ac-
tion. He has already gone on the stand, and testified that Mr. Crocker told
him he was acting as trustee. Now, then, I propose to show what Mr. Rich-
ards told Mr. Crocker in regard to the very matter. *The Court.* I don't think
it is proper under that theory, because it was not related to the time spoken
of by Mr. Richards." Defendants' counsel then said: "I offer it for another
reason: I claim that Mr.Crocker was induced to sign this partition deed upon
the statements made to him by plaintiff, that he was taking the fee in that
property subject to the life estate of Hiram, and that after the death of Hiram
the property would be his." The same objection was interposed, and, in
effect, sustained, to which the defendants excepted.

We find in these rulings no error which would justify us in disturbing the
judgment. It was, in effect, an offer upon the part of the defendants to show
that when the partition deeds were given the plaintiff, who was not at that
time a lawyer, expressed the opinion that upon the death of Hiram the defend-
ant Crocker would become the sole owner of the property. This evidence
was not admissible to vary, contradict, or change the legal effect of the deed
under consideration, or to show the intention of the parties to the deeds
which had been executed about a year before. Neither do we think the evi-
dence was admissible upon the theory that the plaintiff would be estopped by
such a statement from claiming under the deed subsequently given to him by
Samuel Crocker, as it was conceded that such statement was not fraudulently
made. When the plaintiff attempted to show the rental value of the property,
it was objected to, on the ground that there was no claim in the complaint
for use and occupation. The plaintiff's counsel then asked leave to amend,
and the court said that the complaint might be regarded as amended, so that
it should include a claim for use and occupation, not to exceed $1,000. To
this ruling the defendants objected, "on the ground that it sets up a specific
cause of action, and we are not to try but one cause of action,— the cause of
action alleged in the complaint," and excepted to the decision of the court in
allowing such amendment. The appellants now contend that the court erred
in allowing the complaint to be thus amended, and cite the case of *Larned*
v. *Hudson*, 57 N. Y. 151, to sustain their contention. It was plainly decided

in that case that under the Code of Procedure such an amendment could not be properly allowed, and that a complaint which asked to recover the possession of real estate, with damages for withholding it, was insufficient to justify the admission of evidence of the value of the use and occupation. Has the Code of Civil Procedure changed the rule? The appellants claim not, and cite *Clason* v. *Baldwin,* (Sup.) 9 N. Y. Supp. 609, as sustaining their claim. The case cited holds the doctrine contended for, but, when we follow it to its conclusion, we find that upon a second appeal, after a retrial, the general term again held the same doctrine, (13 N. Y. Supp. 681,) and the judgment was modified by reversing so much of it as permitted a recovery of damages for the use of the premises. From that decision an appeal was taken to the court of appeals, where it was held that in an action to recover the possession of real property, where the complaint demanded judgment for the possession of the premises, and a sum named as the plaintiff's damage for withholding the same, but did not contain any averment of damage, the plaintiff was entitled to prove, and, if he recovered judgment establishing his title, to recover, incidental damages for withholding possession after the commencement of the action, including rents and profits, or the value of the use and occupation computed from the commencement of the action, and that the demand in the complaint was sufficient to apprise the defendant to meet the plaintiff's proof in regard thereto. It was, however, intimated in the opinion in that case that a recovery of the rents and profits or the value of the use, as a part of the damages, for a time prior to the commencement of the action, might not be authorized. 129 N. Y. 183, 29 N. E. Rep. 226.

The plaintiff in the case at bar was awarded by the decision and judgment $75 damages for the value of the use and occupation of the premises in question from the commencement of the action to the time of its trial. Following the decision of the court of appeals in the case cited, it must be held that, under the complaint as it was originally drawn, the plaintiff was entitled to recover the damages awarded, and therefore the allowance of the amendment, even if erroneous, in no way prejudiced the defendants, and furnishes no ground for reversal. Examining the defendants' exceptions to the exclusion of evidence as to the condition of Samuel Crocker when the conveyance to the plaintiff was made, we find that a portion of the evidence rejected was that of the defendant Crocker as to the condition of his father during the last two or three years of his life. This evidence was objected to as incompetent, immaterial, and inadmissible, and calling for a transaction or communication with the decedent, under whom the plaintiff claimed. It was, we think, properly rejected. The defendant Crocker was a party, and the plaintiff derived his title from Samuel Crocker, deceased. We think the evidence was within the inhibition of section 829[1] of the Code of Civil Procedure. *Holcomb* v. *Holcomb,* 95 N. Y. 316. In that case it was said: "The words of exclusion are as comprehensive as language can express. Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition, or language of another. The statute is a beneficial one, and ought not to be limited or narrowed by construction." In that case it was held that testimony was improperly received of interested witnesses as to conduct and actions of the deceased tending to show his enfeebled and dependent condition, and as to statements made by him, although not addressed to the wit-

---

[1] Code Civil Proc. § 829, provides that "a party or person interested in the event of an action shall not be examined as a witness in his own behalf or interest against a person deriving his title or interest from a deceased person, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased, except where the person so deriving title or interest is examined in his own behalf, or the testimony of deceased is given in evidence concerning the transaction or communication."

ness, and made in ignorance of his presence. *In re Will of Eysaman*, 113 N. Y. 62, 20 N. E. Rep. 613; *Heyne* v. *Doerfler*, 124 N. Y. 505, 26 N. E. Rep. 1044. The only other evidence that was rejected, bearing upon the condition of Samuel Crocker at the time of the giving of the deed to the plaintiff, was that of Eli Crocker, who was a son of Samuel Crocker, to whom a portion of the property would descend if the plaintiff's deed was held invalid. He was asked the question, "What was his [Samuel Crocker's] health during the last three years of his life?" This was objected to, on the ground that the witness was disqualified from testifying upon this question by section 829 of the Code of Civil Procedure, and the objection was sustained. This ruling seems to be justified by the doctrine of the cases cited. In the *Holcomb Case* it was held that next of kin were interested in the event of the action, within the meaning of section 829. If, however, it be admitted that the court erred in excluding the evidence of these witnesses, still we do not think it sufficient to justify a reversal of the judgment, as the defendants proved by the witness Martha Crocker the condition of Samuel Crocker during the last two or three years of his life, and there was no evidence to contradict that given by her, nor does it appear that they sought to prove anything different by the witnesses whose evidence was excluded. She testified that she lived in the same house with the decedent; that they lived together; that during the last two or three years of his life he was feeble, and did not go out much the last two years of his life. We do not find in these rulings any sufficient error to justify a reversal of the judgment.

Having examined all the exceptions and questions raised by the appellants' brief, and having found no sufficient error to justify us in interfering with the judgment, it follows that it should be affirmed.

Judgment affirmed, with costs. All concur.