ALEXANDER McCOTTER, Appellant, *v.* THE MAYOR, ALDERMEN, AND COMMONALTY OF THE CITY OF NEW YORK, Respondents.

*Contract for Sale of Real Estate—Meeting of Minds—Equity.*

A mere proposition to a municipal corporation to sell land and to fix the price thereof by arbitration, and the appointing in the form agreed of arbitrators to fix the price per acre, is not such a meeting of the minds of the parties upon the terms of purchase and sale as to constitute a contract enforcible in equity.

This action was brought in 1859, to compel the specific performance of an alleged agreement on the part of the Respondents to purchase from the Appellant certain lands situate on Ward's Island, in the East River, of a large part of which island the Respondents were already the owners, or to recover damages for the breach of such alleged agreement.

The action was referred to John L. Mason, Esq., as sole referee, to hear, try, and determine the same.

On the trial a voluminous mass of testimony was introduced, from which a brief statement of the facts is condensed, so far as they are necessary to illustrate the opinion of this Court.

Early in 1857, the Plaintiff made a proposition to the corporation of the city of New York, to convey to them the lands described in the complaint, of which he claimed to be the owner by contract title.

His proposition was, according to the Plaintiff's statement, that the Defendants might take the lands at a stipulated price, or, if that was not satisfactory, the Plaintiff would submit the matter to two arbitrators, one to be chosen by the Mayor, and one by himself.

In the proposition the land was particularly defined, and the numbers of the lots given.

The water grants to be included were all the water grants around the island, except what were previously sold.

On the 31st December, 1857, the Common Council passed a resolution, which was approved by the Mayor, whereby the latter was " authorized and directed to appoint one arbitrator, to meet with one arbitrator to be appointed by the owner, Alexander McCotter, of all the private property and water-rights not owned by the Commissioners of Emigration, or the city of New York, on Ward's Island ; which two arbitrators, if they cannot agree, shall have the power to select a third, provided said McCotter can give such satisfactory title as shall be approved by the Corporation Counsel ; and said decision shall be binding for the purchase of said property by the corporation of the city of New York."

Two arbitrators were appointed, one on behalf of the Plaintiff, who, on the 13th day of February, 1858, made an award, finding the area of the upland property claimed by the Plaintiff to be thirty-one acres and upward, of the value of $2,500 per acre, and of the water-rights and privileges in front of the same to be of the area of nearly forty-nine acres, of the value of $100 per acre.

On March 2, 1858, the Common Council rescinded the resolution for the appointment of arbitrators, and such rescission received the approval of the Mayor, March 5, 1858.

In August, 1858, the Common Council passed, over the Mayor's veto, a resolution, of which the following is a copy :

" Resolved, That the Comptroller be authorized and directed to purchase from A. McCotter, all the land situated on Ward's Island, not now owned by the city of New York, or by the Commissioners of Emigration, including uplands, roads, and water-grants, to the Harbor Commissioners' bulkhead line, according to a map made by A. Kurth and Rosa, civil engineers, dated January, 1858, to which the said McCotter can furnish, or cause to be given, a good and sufficient title, to be approved by the Counsel to the Corporation ; and the Comptroller is further authorized and directed to issue city bonds at        per cent., for the payment of the same, upon the said McCotter withdrawing all or any claims or suit he may have against the city by virtue of any previous arrangement or agreement with the city government."

Before this time, and on May 17, 1858, the Plaintiff had offered the lands on the island to which he could give a satisfactory title for $1,500 an acre, but on condition that the offer should be accepted and "settled" up, and fully consummated at "once," and "closed without delay."

On May 27, 1858, McCotter withdrew this proposition.

On the 18th of October, 1858, the Plaintiff, having previously produced to the Counsel to the Corporation his evidence of title to the lands claimed by him, and which were approved by the said counsel, tendered to the Comptroller conveyances thereof, and left the same in escrow with him, and demanded payment under his proposition of May 17, 1858, and the Comptroller declined payment.

On the trial a variety of questions arose as to area, with regard to roads running through the lands, and other matters, without entering into which this case may be properly decided.

On June 26, 1860, the referee decided in favor of the specific enforcement of the contract against the Defendants, directing the simultaneous delivery of the deeds and the payment of the alleged purchase-money.

On July 14, 1860, judgment was accordingly entered, directing the Defendants specifically to accept the proffered deeds, and simultaneously to pay to the Plaintiff $141,394.22 for principal, interest, and costs.

An appeal to the General Term was taken from this judgment, and after argument, on December 28, 1861, the same was reversed, and a new trial ordered, costs to abide the event.

From that judgment of reversal the Plaintiff appeals to this Court.

*D. McMahon* for Appellant.

*Richard O'Gorman* for Respondents.

WRIGHT, J.—The complaint, after particularly describing the lands which are the subject of the alleged contract, states that the Plaintiff "made a proposition *to the Defendant* to sell to said Defendant the fee-simple title to all and singular *the lands*

*aforesaid,*" at and for a reasonable price, to be " fixed by arbitration."

The premises described in the complaint, and which were the subject of this offer, and to which the phrase " the lands aforesaid " referred, consisted of the whole of Ward's Island, in the East River, and within the boundaries of the city of New York, *except* what was already owned by the city of New York, the Commissioners of Emigration, *and four lots, containing several acres, owned by Mr. Minturn.* This proposition was made some time in 1857, but at what precise time does not appear.

The Common Council of the city passed the following resolution, but whether in response to the foregoing offer is left to inference :

" Resolved, That the Mayor of the city of New York be, and he is hereby authorized and directed to appoint one arbitrator to meet with one arbitrator to be appointed by the owner, Alexander McCotter, of *all the private property and water-rights* not owned by the Commissioners of Emigration, or the city of New York, on Ward's Island, *which two arbitrators, if they cannot agree, shall have power to select a third,* . . . and *said decision* shall be binding for the purchase of *said property* by the corporation of the city of New York."

Without pausing to comment on the form of this extraordinary resolution (for it submits nothing in terms to arbitration), it is sufficient to observe, that so far as it can be considered a proposition to purchase, *it embraces the land of Minturn, in addition to the property offered by the Plaintiff.*

Because the lands embraced within the language of the resolution, and which it may be inferred the arbitrators were to appraise, were " *all* the private property not owned by the Commissioners of Emigration or the city of New York ; " and it was the purchase of " said property " which the decision of the arbitrators was to make binding.

Whether this resolution was called forth by the offer of the Plaintiff is left to inference, but it appears from its terms that it was not an acceptance of it. The arbitrators found the value of

the property "owned or claimed to be owned by the said McCotter, or to which he may furnish a valid title," but they did not estimate the value of the Minturn lots, nor did the Plaintiff ever obtain the title therefor.

That it was the object of the city to purchase *all* the lands on the island not owned by it, is apparent from the language of the report of the committee of the Common Council to whom the matter was referred. It was as follows: "*It is highly essential that the city should purchase whatever property there is on the island belonging to private individuals, and that forthwith.*"

Regarding the resolution as a reply to the Plaintiff's offer, the negotiation, therefore, amounted to just this : The Plaintiff offered to sell to the city of New York property which he at the time owned or controlled, and the city replied by offering to purchase, not alone the lands offered, but other lands in addition thereto, so as to own the whole island.

It therefore cannot be claimed, down to this point, that there was a contract, for the minds of the parties never met.

The learned counsel for the Plaintiff endeavored to answer this objection, on the argument, by saying that the Common Council evidently referred to McCotter's land *only* in the resolution, erroneously styling him as the owner of *all* the private property on the island, when the papers before them showed the contrary.

The difficulty in this argument is, that the resolution does not refer to any papers which were before the Common Council, so as to require them to be construed together. Nor does it appear that there was anything before them, except the original offer of McCotter, which, having been lost, was not produced on the trial.

In giving the contents of that offer, the Plaintiff testifies as follows : " The proposition, I think, was that they might take the lands at a stipulated price, or, if that was not satisfactory, I would submit the matter to *two* arbitrators to fix the value, the one to be chosen by the Mayor of New York, and the other by myself."

The resolution of the Common Council, on the other hand,

proposed *two* arbitrators, and clothed them with the power to select a *third*, in case they could not agree.

This was not an acceptance, and the minds of the parties did not meet.

These considerations, together with the fact that no offer was ever made to convey the property under the alleged contract, disposes of this part of the case.

But it is alleged that there is still another and subsequent contract between the parties, in relation to the same lands, which the Plaintiff claims to enforce, and which arose as follows:

Subsequently to the award of the arbitrators, and on the second day of March, 1858, the Common Council rescinded the resolution authorizing the arbitration, and then, in August, 1858, by another resolution, " authorized and directed the Comptroller of the city of New York to purchase from A. McCotter all the land situate on Ward's Island, not owned by the city or the Commissioners of Emigration, . . . *to which the said McCotter could furnish or cause to be given a good and sufficient title.*"

Prior to this resolution, and on the 17th day of May, 1858, the Plaintiff offered the lands on the island to which he could give a satisfactory title for $1,500 per acre, on condition, among other things, that the matter should be closed without delay.

This proposition, not having been accepted, was withdrawn on the 27th day of the same month, and before the last-named resolution of the Common Council was passed.

Immediately after the resolution of August, 1858, the Plaintiff submitted to the Counsel to the Corporation the evidences of his title to the lands to which he proposed to give a title, which were approved by that officer, and a deed in due form was executed, and tendered to the Comptroller of the city, conveying said lands, which was refused. But it is not even suggested that the Comptroller, in virtue of the power conferred on him by the resolution, ever opened negotiations for the purchase of the lands in question, nor does it appear that the Plaintiff ever requested him to do so.

The second offer of the Plaintiff to sell the lands had been withdrawn when the last resolution was passed, and even had it been otherwise, the resolution could not be construed as an acceptance of it.

It is true that it authorized and directed the Comptroller to buy the lands, but it did not fix the price which he was to pay for them, and that important part of the contract was left open for negotiation, as well as the terms of payment. The Comptroller was authorized and directed to issue city bonds for the payment of the lands—a matter which McCotter did not appear to have ever proposed or agreed to. And even the rate of interest which the bonds were to bear was left blank in the resolution itself.

From the whole case it is evident that no contract between the parties was ever made.

The judgment of the General Term must, therefore, be affirmed, with costs.

All concur.

Affirmed.

<div align="right">

JOEL TIFFANY,<br>
State Reporter.