THE BARROW STEAMSHIP COMPANY (Limited), Respondent,
    *v.*   MEXICAN  CENTRAL  RAILWAY  COMPANY  (Limited),
    Appellant.

The parties negotiated by letter for the transportation by plaintiff of a
    party of emigrants from New York to Rome.    In answer to a letter
    from defendant's agent, which stated that there would probably be
    250 or more in the party, plaintiff's agent wrote "we beg to confirm the
    understanding between us," which the letter stated in substance to be
    that defendant would ship not less than 250.    The letter closed
    "Please confirm this and oblige."    Defendant's agent replied accepting
    the rates offered, adding the following : " There is a probability that
    the party will exceed 250, but I have not been furnished with the exact
    number of each class."    The number furnished by defendant was 134.
    In an action to recover damages for an alleged breach of a contract to
    furnish 250 passengers, *held* (FOLLETT, Ch. J., PARKER and LANDON,
    JJ., dissenting), that as it did not appear that there had been any definite
    understanding between the parties, the statement in plaintiff's letter as
    to the number of the party was to be treated simply as a proposition,
    the acceptance of which without qualification was essential to make

a binding contract; that the proposition was not accepted by defendant; and so that a direction of a verdict for plaintiff was error.

*Justice* v. *Lang* (52 N. Y. 323), distinguished.

(Argued April 18, 1892; decided May 31, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made July 18, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The plaintiff, a corporation owning the steamship Bolivia, alleged that the defendant, a corporation of the state of Massachusetts, having (by transfer) a charter from the republic of Mexico, owns and operates railroads in that republic, entered into an agreement with the plaintiff for the transportation by the latter of certain Mexican pilgrims from the port of New York to the city of Rome, Italy, and return, and undertook that the number should not be less than 250, to be divided into classes, not less than seventy-five first class, seventy-five second class and 100 third class passengers, at the price of $140 for first, ninety dollars for second and fifty dollars for third class for each passenger. And as breach the plaintiff alleged that the defendant failed to furnish that number, but furnished a much less and specified number of passengers for the trip to the plaintiff's damage, etc.

The defendant, admitting that an arrangement for the transportation of Mexican pilgrims from New York to Rome, denies that it undertook that the number should be 250 passengers. The negotiation on the subject of the transportation of the passengers took place between the New York agents of the parties, and is mainly represented by letters between them. The first in order was a letter from the defendant's agent of date March 24, 1888, to the plaintiff's agents, in which he says:

" GENTLEMEN — Referring to the subject of our conversation regarding the pilgrimage from Mexico to Rome, I beg to say that our people in Mexico advise that upon favorable terms they can secure a party of about 175 or 200 people,

with a possibility of increasing the number. These people will be divided into classes about as follows : 75 first class, 75 second class, 50 steerage."

To which the plaintiff's agents by letter of twenty-seventh March, answer as follows :

" DEAR SIR — Referring to your favor of the 24th inst. we now beg to say that we are prepared to convey the Mexican pilgrims from New York to Naples by our steamer Bolivia to sail about the 16th April, forwarding them from Naples to Rome; return by rail in their respective classes, leaving Naples again for New York about thirty days after landing, for the following rates of passage : First class one hundred and forty dollars, second class ninety dollars, third class fifty dollars. We will in addition grant two free passes to Naples and return with each hundred passengers."

The next is the following letter from the defendant's agent of date March 31, 1888 :

" GENTLEMEN — Again referring to the subject of the pilgrimage from Mexico to Rome, I have to say that I am in receipt of a telegram from Mexico advising that all arrangements have been made so that this party can leave there at an early date next month, and there is a probability that there will be 250 people or more. Our people, however, are not entirely satisfied with the terms offered by you since the railroad companies have been obliged to agree to give ten free passes to parties in charge of the pilgrimage, and before we can close with you it will be necessary for you to agree to make provision for the above-mentioned ten organizers and conductors by allowing five free passes, and by selling five first class tickets at rate of $100 each, New York to Rome and return. Owing to the fact that our through rate for steerage passengers has been fixed so low, it will be necessary for you to make a rate of $45 each, New York to Rome and return for this class, the same figure as the through rate advertised by us, was originally based upon. If you are willing to make

the above arrangement I am prepared to close immediately for the party from here the 16th prox."

Then came the following letter from the plaintiff's agents of the same date:

"DEAR SIR — Referring to your favor of the 31st inst., and conversations had with you by our representative, Mr. Martin, regarding transportation of Mexican pilgrims from New York to Rome and return by our S. S. Bolivia, to sail from this port for Naples about the 16th proximo, and to return from that port about thirty days after their arrival there, we beg to confirm the understanding arrived at between us,viz. : that you will ship not less than 75 first class, 75 second class and 100 third class passengers for the round trip, for which we agree to furnish transportation from New York to Rome and return at the following rates : for first class, one hundred and forty dollars ; second class, ninety dollars, and third class, fifty dollars, subject to a commission of five per cent ; and further we agree to furnish five free passages to Rome and return, and five for one hundred dollars each, and we promise to endeavor to secure free transportation for these five people from Naples to Rome and return ; and we further promise that if we can see our way to reduce the steerage or third class rate by reason of any concession in rail fares which we may procure from the Italian Ry. Co. that we will do so. We also understand that prior to the sailing of the steamer one-half of the passage money for the round trip will be paid to us. Please confirm this and much oblige."

Then follows of the same date this letter from the defendant's agent :

"GENTLEMEN — I beg to acknowledge the receipt of your favor of this date regarding transportation of pilgrims from Mexico to Rome and return, and I beg to accept rates quoted therein from New York to Rome and return for said party to be transported per steamer Bolivia on the 16th prox. Regarding the numbers of the party I beg to say that my latest advice from Mexico as mentioned in my previous letter of

this date that there is a probability that the party will exceed 250, but I have not been furnished with information as to the exact number of each class. I have telegraphed the first and second class capacity of Bolivia, and, of course, if our people exceed those numbers in either class, such excess numbers will have to adapt themselves to the accommodations which can be furnished."

Letters of date April 3, 1888, passed between the agents, in which no reference is made to the subject of number of passengers. They contain nothing essential to the question in controversy.

The plaintiff's agent having been verbally advised by the defendant's representative of the number of pilgrims who would constitute the excursion party, sent to the defendant's agent the following letter of date April 12, 1888 :

"DEAR SIR — We were very much surprised to learn from your representative this morning of the great falling off in numbers of the Mexican excursion party from what were guaranteed in your letter of the 31st ult. to us, and for which we have been making preparations, namely : 75 first class, 75 second class and 100 third class passengers. Every other consideration having been sacrificed by us to accommodate this party, we beg to notify you that we shall hold you responsible for the passage money due to us on the number originally arranged for."

To which the defendant's agent responded by letter of date April 13, 1888, as follows :

"GENTLEMEN — Upon my return I find your favor of 12th inst. regarding pilgrimage from Mexico to Rome. I beg to correct the impression which you seem to have, that my letters of 31st ult. guaranteed you 75 first class, 75 second class and 100 third class passengers. Those letters contained information as to size of the party exactly as I received it from Mexico, namely, 'that there is a probability that the party will exceed 250,' and in fact one of the letters dis-

tinctly stated that no information had been received as to the number of people in each class. Your Mr. Martin has seen all recent telegraphic correspondence between our people at Mexico and this office upon the subject of this pilgrimage, and while I have expected that the numbers would be in accordance with the indications contained in such telegrams, I have made no definite guarantee either verbally or in writing, and moreover had you been guaranteed 250 people it would have been unnecessary for you to have made daily inquiries during the present week as to the number in the party, as you have done. As shown in the telegram, of which a copy was left at your office yesterday, this pilgrimage has proved a partial failure, and can result in no profit to the Mexican Central railway or any of the other railways in interest."

The Bolivia sailed on the sixteenth of April, and the number of pilgrims furnished by the defendant was sixty-four first class, thirty second class and forty third class passengers. In the event the plaintiff was entitled to recover as for breach of contract the damages amounted to $5,471. The court refused to direct a verdict for the defendant, and directed a verdict for that sum for the plaintiff. Exceptions were taken by the defendant to such refusal and direction.

Further facts are stated in the opinion.

*S. F. Kneeland* and *J. Lewis Stackpole* for appellant.

*Joseph A. Shoudy* for respondent.

Bradley, J. The question at the trial was treated by the parties as one of law merely. If, therefore, the evidence warranted the recovery by plaintiff, the verdict as directed must be sustained, although the result may have required the determination of a question of fact. (*Kirtz* v. *Peck,* 113 N. Y. 222.) The parties evidently expected that the number of pilgrims from Mexico to be by the plaintiff transported on its steamship Bolivia from the city of New York to Naples,

thence by railroad to the city of Rome, Italy, and in like manner returned to New York, would be at least two hundred and fifty.   The plaintiff charges that the defendant by agreement undertook to furnish for such purpose that number, to consist of seventy-five first class, seventy-five second class and one hundred third class passengers, which would enable the plaintiff to receive as fare for each, in the first class one hundred and forty dollars, in the second class ninety dollars, and in the third class fifty dollars.   The interest of the defendant was apparently in the transport of passengers over its railroad in Mexico, and with a view to that sought the means of conveyance for the pilgrims the round trip to and from Rome. The defendant contends that it did not undertake that the plaintiff should have that or any definite number of passengers or of any specific number of each or any one of the classes from Mexico for its steamship.   And the determination of this controversy is dependent upon the import of the correspondence between the agents representing the parties in the city of New York.   It seems from the letters that the matter had been the subject of some conversation between them, but what that was does not appear.   The earliest letter was March 24, 1888, from the defendant's agent, to the effect that he was advised by his people in Mexico that upon favorable terms they could secure a party of about 175 to 200 people, with a possibility of increasing the number.   In the answer of March twenty-seven to this, the plaintiff's agents, without further reference to number, gave the rates at which the passengers would be transported the round trip as $140 for first class, $90 for second class and $50 for third class. No definite number had then been mentioned; but for evidence of the alleged contract reliance is had upon the correspondence of March thirty-first, which was opened by the defendant's agent, to the effect that he was advised by telegram from Mexico that "there is a probability that there will be 250 people or more" in the party.   Then follows the letter of same date to him from the plaintiff's agents, in which they say : " Referring to your favor of thirty-

first inst. and conversations had with you by our representative regarding transportation    *    *    *    we beg to confirm the understanding arrived at between us, viz., that you will ship not less than 75 first class, 75 second class and 100 third class passengers for the round trip, for which we agree to furnish transportation from New York to Rome and return at the following rates." Then they proceed to state the rates as before mentioned with some further matters of detail, and close the letter with the words: "Please confirm this and much oblige." By this letter the plaintiff's agents assume to state an understanding between them and the defendant's agent. But as no evidence of any definite understanding in respect to the number of pilgrims to constitute the party for transportation prior to that letter appears in the record, the statement in the letter must be treated as a proposition on the part of the plaintiff. And to give it the effect of a contract between the parties the acceptance or adoption of it by the defendant was essential. (*Hough* v. *Brown*, 19 N. Y. 111.)

By letter of the same date in reply the defendant's agent says: "I beg to accept rates quoted therein from New York to Rome and return for said party to be transported by steamer Bolivia on sixteenth, prox. Regarding the numbers I beg to say that my latest advice from Mexico mentioned in my previous letter of this date that there is a probability that the party will exceed 250, but I have not been furnished information as to the exact number of each class." He does not in terms comply with the request in the letter of the plaintiff's agents to confirm the understanding there expressed, but makes reference to and repeats what he has said in his previous letter in respect to his advice from Mexico on the subject of the number of passengers and disclaims information of their classification as such.

This is not a case of conflict in evidence. The question is one of construction and effect of the written correspondence between the representatives of the parties. And the plaintiff in support of his recovery is entitled to the benefit of any

inferences which may legitimately arise in that behalf.   While
the entire correspondence is the subject of consideration for
that purpose, the question whether the defendant's agent
accepted, adopted or assented to the proposition of the plain-
tiff is dependent mainly on his last letter of the thirty-first of
March.   He did there accept the rates.   But is the inference
permitted that he intended to assent to the proposition in
respect to the number which should constitute the party of
pilgrims for transportation by the plaintiff?   There does not
seem to be anything equivocal in expression for interpretation
as there was in *Justice* v. *Lang* (52 N. Y. 323, 326).   His
reference to " said party " was applicable to the persons who
should come from Mexico to be so transported.   It seems that
he had only such information on the subject of the number
constituting it as he had received by communication from
there, and his statement in that respect was a qualified one.
His expression of probability that the party would exceed
250 cannot be construed as an undertaking that there would be
at least that number.   It indicated only an expectation derived
from advices he had received from Mexico on the subject.
This is the rational and only meaning which can fairly be
given to it.   Such expectation was undoubtedly also enter-
tained by the plaintiff.   And in its behalf it is contended
that some effect must be given to the reference in the letter
of its agents to prior conversations in support of the under-
standing expressed in such letter ; and that assent to it may
be inferred by the omission of the defendant's agent in his
letter to specifically controvert the statement so made of an
understanding.   But it may be observed that in the same
letter the defendant's agent is requested to confirm what was
asserted in the letter to him.   Without evidence that this
statement in that letter was strictly in accordance with some
prior verbal arrangement, it did not tend to prove that such
was the fact.   It follows that without any answer to the letter
or with one unless by it the terms so expressed were adopted,
no contract would be consummated between the parties to
that effect.   The acceptance without qualification of the

plaintiff's proposition was essential to such result.   (*Hough* v. *Brown*, 19 N. Y. 111; *Brown* v. *N. Y. C. R. R. Co.*, 44 id. 79; *Myers* v. *Smith*, 48 Barb. 614; *Eliason* v. *Henshaw*, 4 Wheat. 225; *National Bank* v. *Hall*, 101 U. S. 43; *McCotter* v. *City of New York*, 37 N. Y. 325.)

In *Chicago, etc., Ry. Co.* v. *Dane* (43 N. Y. 240), the defendant by letter agreed to receive from the plaintiff in the port of New York and transport to Chicago not exceeding 6,000 tons of railroad iron at a specified price during certain months mentioned. The plaintiff by letter to the defendant, stated that it assented to the agreement and would be bound by its terms. It was there held that the parties had made no binding contract because, although the plaintiff had assented to the proposition, it had not undertaken to deliver any iron for transportation. In that respect there the promise was created as unilateral. In the present case the plaintiff's proposition embraced the elements of a contract between the parties, and the adoption of it by the defendant would impose upon it the obligation which its terms purported to create. But the difficulty is that the defendant's letter did not supply the requirement to constitute a contract on its part to furnish for transportation the number of pilgrims specified in such proposition, nor of the respective classes there mentioned. There was no ambiguity in the language employed by the defendant's agent in his letter on the subject. The expressed probability in that respect, at most imported, only supposition or belief founded upon expectation as to the number of pilgrims, or that it would equal or exceed that which the plaintiff had in view. Something more, either expressed or implied, was requisite for an undertaking that any specific number would be furnished to take passage in the plaintiff's steamship. The purport of it was that the defendant's agent gave those of the plaintiff the information he had received from Mexico, and nothing appears here tending to show that it was not correctly and in good faith given by him to them. He gave them the same expectation he had derived from communications received on the subject. If he had been willing

to do so he may have given a guaranty to that effect. But no such intent is furnished by anything appearing in any of his letters. He wanted to advance on their pilgrimage those brought over the defendant's railroads, and the negotiation was had in that view with the plaintiff's agents. The latter desired to be informed of the number in the party. The defendant's agent first said he was advised by communication from Mexico that there could, on favorable terms, be secured 175 or 200 pilgrims, with probability of increasing the number; and later that he was in like manner advised that there was a probability that there would be 250 or more for the trip. Immediately following this last communication to the plaintiff's agents their proposition was made, and in reply the information so received by him was referred to and repeated. We find in this or in all the correspondence together no evidence of intent on the part of the defendant through its agent to undertake or guarantee that any specific number of Mexican pilgrims should be furnished for transportation by the plaintiff, or to assent to any understanding to that effect. And so far as related to the numbers of each class, the plaintiff's agents were advised that the representative of the defendant had no information. And afterwards by letter on the part of the plaintiff of date April fifth, this was recognized and the defendant's agent was requested to ascertain by wire "the numbers in each class and the numbers of women in each class, and if possible the number of half fares." The adoption in all respects of the proposition of the plaintiff was essential to its conversion into a contract between the parties.

There is no opportunity for the purposes of the contract to distinguish between the specific number referred to and the excess of it. By the statement of his information received that there was a probability that the number would exceed 250, the defendant's agent cannot be deemed upon any construction to which his language was entitled, to have intended to enter into contract to furnish such number of passengers, nor is it open to interpretation which would justify inference to that effect.

SICKELS—VOL. LXXXIX.    4

In the view taken of it there is in the evidence presented by the record no support for the contract alleged in the complaint. Although the expectation founded upon the statement so made by the defendant's agent may have led to preparations prejudicial to the plaintiff, it is not seen that defendant (assuming it acted in good faith) is chargeable with the consequences. Nor does it follow that, as suggested by the court below, the plaintiff was bound to proceed with the number of such passengers who did appear for transportation. By having made the proposition the plaintiff, if so advised, may have required compliance with it as a condition of proceeding on the voyage to Naples, or of carrying those passengers at any special rates.

These views lead to the conclusion that the judgment should be reversed and a new trial granted, costs to abide the event.

FOLLETT, Ch. J. (dissenting). It is apparent from the correspondence, that the rate to be charged per passenger by the plaintiff was largely dependent on the number to be carried; that both parties so understood it, and that the negotiations between them were conducted on that basis. This being the understanding, the plaintiff's agent wrote to defendant's agent as follows:

"*March* 31*st*, 1888.

"G. W. KEELER, Esq., *General Eastern Agent, Mexican Central Ry. Co. (Ltd.), New York:*

"DEAR SIR—Referring to your favor of the 31st inst., and conversations had with you by our representative, Mr. Martin, regarding transportation of Mexican pilgrims from New York to Rome and return, by our S. S. 'Bolivia,' to sail from this port for Naples about the 16 proximo, and to return from that port about thirty days after their arrival there, we beg to confirm the understanding arrived at between us, viz.: That you will ship not less than 75 first class, 75 second class and 100 third class passengers for the round trip, for which we agree to furnish transportation from New York to Rome and return, at the following rates: For first class,

one hundred and forty dollars; second class, ninety dollars, and third class, fifty dollars, subject to a commission of 5 per cent, and further, we agree to furnish five free passages to Rome and return, and five first-class passages to Naples and return to New York, for one hundred dollars each, and we promise to endeavor to secure free transportation for these five people from Naples to Rome and return; and we further promise that if we can see our way to reduce the steerage or third-class rate, by reason of any concessions in rail fares, which we may procure from the Italian Ry. Co., that we will do so. We also understand that prior to the sailing of the steamer, one-half of the passage money for the round trip will be paid to us. Please confirm this, and much oblige,

" Yours truly,

" HENDERSON BROTHERS."

It is said that the following language amounts to a proposition only : " We beg to confirm *the understanding arrived at between us*, viz. : That you will ship not less than 75 first class, 75 second class and one hundred third class passengers for the round trip, for which we agree to furnish transportation from New York to Rome and return, at the following rates." I think it is more than a proposition. It asserts the existence of an understanding arrived at between the parties, by letters " and conversations." If the defendant did not concede the existence of the understanding, it was its duty to have denied it. (*Gibney* v. *Marchay*, 34 N. Y. 301–305 ; Whart. Ev. § 1136 ; Green. Ev. § 197 *et seq.*) It is now in the same position as though it had stood by and heard the other party assert that a material fact existed and had failed to deny it. After having contracted with the plaintiff without denying the truth of the assertion of the existence of this material fact, the defendant cannot now say that the assertion was untrue. But if it be assumed that there is no evidence of a previous understanding as to the number of passengers to be furnished by the defendant, and that the plaintiff's letter of ·March thirty-first amounted to a proposition only, the result

is not changed. The plaintiff's proposition was an entire one and the acceptance not being qualified or limited in its terms, should be held to be an acceptance of the proposal as made. I think the correspondence shows that the rates per passenger were agreed to upon the understanding that not less than 250 were to be furnished. It cannot be said that had the defendant offered fifty or 100 passengers, the plaintiff could have been required to carry them at the rates named. I think the Supreme Court correctly construed the contract, and that its judgment should be affirmed, with costs.

All concur with BRADLEY, J., except FOLLETT, Ch. J., PARKER and LANDON, JJ., dissenting.

Judgment reversed.