## GATES v. DUDGEON.

(Supreme Court, Appellate Division, Second Department. May 29, 1902.)

1. CONTRACT TO CONVEY REAL ESTATE—CORRESPONDENCE.

     In determining whether a contract to convey real estate is made out by letters passing between the parties, the entire correspondence should be considered, and not merely a part thereof.

2. SAME—SUFFICIENCY TO PRODUCE CONTRACT.

     Plaintiff's first letter to defendant, a trustee, offered to pay $3,000 cash for certain realty, to be conveyed to a third person, named. Defendant's answer stated that his title rested on adverse possession only, and suggested an examination by plaintiff, and that if plaintiff was satisfied he was ready to give a trustee's deed without warranty. A following letter from plaintiff, dated May 6th, accepted defendant's suggestion, and called attention to defendant's omission to state the consideration, or to agree to execute a deed to some grantee other than plaintiff. A letter from defendant dated May 13th called for a further conference between the parties. A letter from plaintiff dated May 23d

inclosed a draft for a deed, and one written June 3d offered "to go over the matter," though the writer supposes everything is settled save as to formalities. *Held* not to sufficiently show a completed contract entitling plaintiff to specific performance.

Appeal from special term, Nassau county.

Specific performance by Charles O. Gates against William M. Dudgeon as trustee under the last will and testament of Richard Dudgeon, deceased. Decree for complainant, and defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Daniel P. Hays, for appellant.
David C. Bennett, Jr., for respondent.

JENKS, J. This is an action for specific performance of a contract to convey real estate wherein the defendant pleads the statute of frauds. 2 Rev. St. p. 137, § 2; Real Property Law, § 224. The plaintiff insists that the contract is made out by the letters of the parties. In the determination of that question we should consider the entire correspondence, and not rest at the reading of but a part thereof. Hussey v. Horne-Payne, 4 App. Cas. 311; May v. Thomson, 20 Ch. Div. 705; Barrow S. S. Co. v. Mexican Cent. Ry. Co., 134 N. Y. 15, 23, 31 N. E. 261, 17 L. R. A. 359; Carter v. Shorter, 57 Ala. 253.

In Hussey v. Horne-Payne, supra, an action for specific performance, where reliance was upon correspondence, Cairns, L. C., said:

"You must take into consideration the whole of the correspondence which has passed. You must not at one particular time draw a line and say: 'We will look at the letters up to this point, and find in them a contract or not, but we will look at nothing beyond.' In order fairly to estimate what was arranged and agreed, if anything was agreed between the parties, you must look at the whole of that which took place and passed between them."

In May v. Thomson, supra, Lindley, J., speaking of letters, says:

"It appears to me that there is not any portion of this correspondence which can be fairly separated from the rest and be treated as a concluded agreement. It appears to me that each letter is modified by the one that follows it, and that there is never a period throughout at which we can stop and say: 'Here is a definite agreement between the parties.' The case of Hussey v. Horne-Payne, before the house of lords, shows that we must look at the whole correspondence from beginning to end. Of course, if we find a few letters which are perfectly plain in themselves, which show an agreement, and the parties do not follow them up by further correspondence, we have a comparatively easy case; but where one letter is followed by another, which suggests something else as a topic for discussion, it becomes most dangerous to draw a line after any particular letter."

The first letter of the plaintiff may be read as an offer of the plaintiff to pay $3,000 cash for the realty to be conveyed, to a third person named, by the usual trustee's deed, without warranty. The answer of the defendant states that his title rests on adverse possession only, and suggests an examination by the plaintiff, and that if plaintiff is satisfied he is ready to give the usual trustee's deed without warranty to the plaintiff. The consideration is not named or confirmed. Even if it should be inferred that the defendant agreed upon the price, this is but an inference from his silence. But, assuming that the minds

met as to the property to be conveyed and the price to be paid there-for, it is clear that the defendant did not agree to execute the conveyance to any third person as proposed by the plaintiff, or to do so unless the plaintiff was satisfied after considering his statement of the source of his title and his suggestion that the plaintiff should examine into the title. If A. says to B., "I am ready to pay $1,000 for your farm, Blackacre, if you will make the deed to C.;" and B. answer, "I will give you a deed for that sum,"—there is no meeting of the minds. B. has a perfect right to insist who shall be his grantee, and his offer to accept A. as grantee is not an acceptance of A.'s offer that C. shall be the grantee. An acceptance upon terms varying from the offer is but a rejection. Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co., 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376; Mahar v. Compton, 18 App. Div. 536, 45 N. Y. Supp. 1126. That the plaintiff did not consider that the minds had met in contract appears from his letter of May 6th; for he accepts the suggestion to look into the title, and calls attention to the omission of the defendant to state the consideration or to agree to execute a deed to some grantee other than the plaintiff. The letter of May 13th is not confirmatory, but is an invitation for a further and a general conference upon the subject-matter. The letter of May 23d is written to inclose a draft for a deed, while that of June 3d offers "to go over the matter," although the writer states that he supposed that it had been settled save as to formalities.

Upon consideration of this correspondence, I think that it does not establish a meeting of the minds upon all of the essentials which must be embodied in a contract, but that it must be construed as the writing of preliminary negotiation, which shows progress towards an agreement, but not the completion thereof. While a contract may be established by correspondence, it must appear therefrom that there was an offer and an acceptance of all the essentials, without qualification and in precise terms. Barrow S. S. Co. v. Mexican Cent. Ry. Co., supra; Brown v. Railroad Co., 44 N. Y. 79; Bish. Cont. § 323. In Stratford v. Bosworth, 2 Ves. & B. 341, the vice chancellor cites the rule of Eldon, L. C., in Huddleston v. Briscoe, 11 Ves. 583:

"The court is not to decree performance, unless it can collect, upon a fair interpretation of the letters, that they import a concluded agreement. If it rests reasonably doubtful whether what passed was only treaty, let the progress towards the confines of agreement be more or less, the court ought rather to leave the parties to law than specifically to perform what is doubtful as a contract."

The judgment should be reversed, and a new trial ordered, costs to abide the event. All concur.