## OHIO & MICHIGAN COAL CO. v. CLARKSON COAL & DOCK CO.

(Circuit Court of Appeals, Sixth Circuit.  June 14, 1920.)

No. 3359.

1. **Contracts ⌒163—Sales ⌒85 (2)—Absent irreconcilable conflict between written and printed matter, effect should be given to the whole; effect of strike proviso.**

In the absence of any irreconcilable conflict between written and printed matter in a contract, when it appears that the printed matter is intended to be part of the contract, the whole must be construed together, and effect given to every part thereof, and so effect should be given to a printed provision in a contract for the sale and purchase of coal that all quotations, orders, and contracts should be subject to car supply, strikes, and causes beyond the parties' control.

2. **Contracts ⌒176 (2)—Understanding of parties, when doubtful, should be submitted to jury.**

Where, from the nature of printed matter in a contract, doubt arises as to the intention and understanding of the parties thereto, such question should be submitted to the jury.

3. **Contracts ⌒23—Acceptance on condition is rejection.**

Acceptance of an offer on condition is a rejection of the proposition as made, and such acceptance does not create an enforceable contract.

4. **Pleading ⌒427—Failure to put execution of contract in issue excused, where plaintiff's evidence indicated there was no contract.**

Though defendant in an action for breach of contract of sale failed to deny the execution of the contract by affidavit, as required by District Court rule 28, declaring that the failure to so deny shall relieve plaintiff from making proof of execution, yet where plaintiff introduced correspondence as showing contract, which showed that plaintiff's acceptance contained a condition not in the proposal, defendant is entitled to introduce evidence of its salesman, who prepared the proposal, to the effect that it was subject to defendant's approval, as well as subsequent correspondence showing that the contract was not contained in the correspondence introduced.

⌒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Sales ☜85(2)—Printed provision in defendant's letter limiting liability held binding on plaintiff.**

Where printed statements in defendant's letters relative to sale of coal that contract was subject to causes beyond defendant's control, etc., were not objected to by plaintiff, whose own communications containing similar provisions, plaintiff is precluded from denying, that defendant's agreement was subject to such conditions, and hence evidence of strikes, etc., was admissible to excuse a breach.

**6. Appeal and error ☜882(8)—Defendant held not entitled to complain of the admission of an exhibit.**

Where defendant offered numerous telegrams and letters, it cannot complain of the admission of one of them, which was received without objection, but may have been prejudicial; the others having been excluded.

In Error to the District Court of the United States for the Eastern District of Michigan; John M. Killits, Judge.

Action by the Clarkson Coal & Dock Company against the Ohio & Michigan Coal Company. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

Justin R. Whiting and Sanford W. Ladd, both of Detroit, Mich. (Warren, Cady, Ladd & Hill, of Detroit, Mich., and Atkinson & Northmore, on the brief), for plaintiff in error.

James O. Murfin, of Detroit, Mich. (Stellwagen & McKay, of Detroit, Mich., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The Clarkson Coal & Dock Company commenced an action in the court below to recover damages from the Ohio & Michigan Coal Company for breach of contract for the purchase of one cargo of about 6,500 tons of West Virginia splint coal in the proportion of 65 per cent. lump and 35 per cent. nut and slack, to be floated in May of 1916.

It is averred in the declaration that the defendant wholly failed and refused to deliver this cargo of coal during the month of May, 1916, but at various intervals between the 1st day of June, 1916, and the 5th day of October, 1916, did offer various excuses for its failure to do so and requested further time in which to furnish the same; that the plaintiff acquiesced in this request up to the latter part of October, 1916, but that defendant wholly failed, neglected, and refused to deliver this cargo of coal to the damage of plaintiff in the sum of $30,000.

The declaration avers that a copy of this contract, marked Exhibit ——, is attached thereto. This does not appear in the printed record, but the accuracy of the copy of this exhibit printed in defendant in error's brief is not questioned by plaintiff in error.

To this declaration the defendant filed a plea of the general issue. Later an amended plea was filed, with the following special notice:

"You will please take notice that the defendant will show, and insist upon in its defense, that if it be shown that any coal remains unshipped and which

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was due to the Clarkson Coal & Dock Company, a corporation, under any contract, or order, as pleaded in said declaration, that such nonshipment was due to contingencies beyond the control of the Ohio & Michigan Coal Company because of delays and losses in railroad transportation, combinations, turn-outs, strikes among miners, car shortages, or other causes beyond its control, whereby it was unable to ship the cargo of coal claimed to be due said plaintiff from defendant, Ohio & Michigan Coal Company, as alleged in said declaration."

During the trial of the cause the defendant sought to amend the amended plea by adding thereto:

"Also you will please take notice that the defendant will show, and insist upon in its defense, that on or about the 13th day of October, 1916, the plaintiff and said defendant entered into a series of negotiations continuing up until the 27th day of October, 1916, by and through which said plaintiff acquiesced in said defendant's selling and disposing of such coal as it had accumulated, to be used by it towards the performing of the modified contract here in suit; that said action by said plaintiff rendered the performance of said contract by said defendant impossible; that said action was inconsistent with the demand of said plaintiff that the cargo of coal here in question be delivered thereafter and on or about November 10, 1916, and resulted in a modification and abandonment of the contract or modified contract as pleaded in plaintiff's declaration."

The court refused to permit the defendant to file this amendment to its amended plea, to which ruling of the court the defendant excepted. The court also rejected all evidence relating to the negotiations for settlement offered by defendant, except the telegram from the plaintiff to the defendant dated October 27, 1916 (Exhibit 79), to the admission of which telegram counsel for plaintiff did not object.

The court also rejected evidence tending to show delays in railroad transportation, car shortages, or other causes beyond the control of the defendant, and directed the jury to return a verdict for the plaintiff for damages in an amount equal to the difference between the contract price and the fair market price as shown by the evidence in the case, during the month of October, 1916, and up to the 27th of that month, to all of which the defendant at the time excepted. The defendant also asked the court to give in charge to the jury a number of special requests, which the court refused to give, and to which refusal the defendant excepted.

On the trial of this cause the plaintiff offered in evidence Exhibits 5 and 5–A. Exhibit 5 was not signed by the Clarkson Coal & Dock Company, but it was accepted on the part of the Ohio & Michigan Coal Company by J. A. Devoy. Exhibit 5–A was signed by the Clarkson Coal & Dock Company and forwarded by it directly to the home office of the Ohio & Michigan Coal Company.

The fact that Exhibit 5 was not signed by the Clarkson Coal & Dock Company would, perhaps, not be important, if Exhibit 5–A, signed by the plaintiff company and sent by it to the home office of the Ohio & Michigan Coal Company at Detroit, Mich., were an exact copy of Exhibit 5. Exhibit 5–A is written upon two sheets of letter paper. At the bottom of the first sheet, and preceding the signature of the Clarkson Coal & Dock Company, the following provisions and conditions are printed:

"All quotations, orders, and contracts are subject to car supply, strikes, accidents, and causes beyond our control."

These provisions and conditions are not found in Exhibit 5, signed by J. A. Devoy on behalf of the Ohio & Michigan Coal Company. This printed matter is not in small, unreadable type on the side margin of the sheet; but, on the contrary, it is at the bottom of the first page, and immediately follows the typewritten matter on that page. It is just as prominent and as easily read as any other part of the exhibit. These conditions are naturally incident to a contract of this kind, or any other kind, where the ability of the contracting parties to perform depends largely upon other individuals or agencies, over whom they can exercise no control.

[1] The Clarkson Coal & Dock Company is in no position to claim that this printed matter on its letter sheet is of no importance and was not intended by it to become a part of this contract. Evidently it was its deliberate and carefully considered intent and purpose that these conditions should apply in each and every contract made by it, either for the purchase or sale of coal; otherwise, the printing of the same upon its stationery would have been a useless and an idle performance. There is no conflict or repugnancy between the typewritten and printed parts of this exhibit. The law is well settled that, in the absence of any irreconcilable conflict between the written and printed matter, when it appears that the printed matter is intended to be a part of the contract, the whole must be construed together and effect given to every part thereof. Poel v. Brunswick-Balke-Collender Co., 216 N. Y. 310, 110 N. E. 619; Bank v. Insurance Co., 83 Ohio St. 309, 94 N. E. 834.

[2] Even if, from the nature of the printed matter or its position in the exhibit, a doubt arises as to the intention and understanding of the parties in reference thereto, then the question of their intention and understanding must be submitted to the jury. Clark v. Woodruff, 83 N. Y. 518, 522; Sturtevant Co. v. Fire Proof Film Co., 216 N. Y. 199, 110 N. E. 440, L. R. A. 1916D, 1069.

[3-5] It is claimed, however, that these provisions and conditions found in Exhibit 5-A, that do not appear in Exhibit 5, even if they should be read as a part of Exhibit 5-A, are of no importance in this litigation, for the reason that they apply only to the Clarkson Coal & Dock Company, and are not available to the Ohio & Michigan Coal Company as a defense to this action. That is no doubt true, but, if there is a material difference between these two exhibits, that fact is of vital importance in determining which exhibit, if either, expresses the true contract between these parties. Mr. Devoy, representing the Ohio & Michigan Coal Company, signed Exhibit 5. It was not signed by the Clarkson Coal & Dock Company, but that company did sign Exhibit 5-A, which exhibit contains these printed conditions and provisions for the benefit of the Clarkson Coal & Dock Company. This was not signed by Devoy. It necessarily follows that, if these two exhibits differ materially, the signature of the Clarkson Coal & Dock Company to Exhibit 5-A is not equivalent to its signing Exhibit

5.  Counsel for plaintiff below recognized this fact and stated in open court:

"That if Exhibit 5 was not the original we are out of court, because there is no acceptance of it under the statute of frauds, and we would have to stop right now."

If there had been a breach of this contract on the part of the Clarkson Coal & Dock Company, and the defendant had brought an action for damages for such breach, the materiality of the difference between Exhibit 5 and Exhibit 5–A would at once become apparent, for the Ohio & Michigan Coal Company would have been compelled to predicate its action upon the exhibit signed by the Clarkson Coal & Dock Company, and its own letter accepting the same with modifications, and the letter from the Clarkson Coal & Dock Company accepting these modifications, as evidencing the true contract upon which the minds of the contracting parties finally met. The Clarkson Coal & Dock Company could then have predicated its defense upon any one or all of the printed conditions appearing in Exhibit 5–A which defenses would not have been available to it if Exhibit 5–A were an exact copy of Exhibit 5.  The fact that the Clarkson Coal & Dock Company brought this action does not affect the question of the terms of the contract between it and the defendant.

It is claimed, however, that there is no such issue presented by the pleadings in this case;  that under rule 28 of the District Court the failure of the defendant to deny by affidavit the execution of the contract declared upon relieves the plaintiff from making proof of the execution thereof;  that under this rule the contract as pleaded must be accepted by the court as the contract between the parties without further inquiry in reference thereto.

The plaintiff, however, did not rely upon this rule, but on the contrary introduced in evidence Exhibits 5 and 5–A.  If the trial court entertained any doubt that it was the intention of the parties that these printed conditions in 5–A should be part of their contract, it should have submitted that question to the jury.  On the other hand, if from the position of this printed matter, the size of the type used, and its prominence in the exhibit, the trial court was of the opinion that it was clearly intended by the parties to be and become a part thereof, then, if nothing else appeared, it would have been the duty of the court to have directed a verdict for the defendant.  The defendant, however, upon cross-examination of Mr. Clarkson, introduced Exhibits 8 and 9.  These exhibits, taken in connection with Exhibits 5 and 5–A, and particularly 5–A, constitute a contract between the parties substantially as averred in the declaration, but containing other and further terms and conditions not set forth in the declaration or the paper purporting to be a copy of the contract attached thereto.

Exhibit 8 is the reply of the Ohio & Michigan Coal Company to the letter (Exhibit 5–A) of the Clarkson Coal & Dock Company.  This exhibit was written on the letter sheet of the Ohio & Michigan Coal Company, which, like the letter sheets of the Clarkson Coal & Dock Company, upon which Exhibit 5–A was written, contains printed con-

266 F.—13

ditions of sale. These conditions are found directly in the body of the exhibit, which is substantially in the following form:

"March 21, 1916.

"Worrell Clarkson, Pres. Clarkson Coal & Dock Co., St. Paul, Minn.—Dear Sir."

This part is in typewriting; then follows the printed matter under the caption, also printed, "Conditions of Sale and Shipment." Under this caption are printed six separate paragraphs; the first paragraph providing as to the payment of freight, the second as to when the contract shall be considered binding, the third as to the time of payment, the fourth as to delays in railroad transportation, car shortages, and the like, the fifth as to the mine weights, and the sixth as to cancellation of orders. Then follows the rest of the typewritten part.

In this letter the Ohio & Michigan Coal Company refused to approve the terms as written in Exhibit 5–A but, on the contrary, informed the Clarkson Coal & Dock Company that this would be acceptable to it with this proviso:

"That the coal usually runs 65 per cent. lump over a 1½″ screen and 35 per cent. nut and slack; but should this percentage vary either way from 1 to 3 per cent., we will not permit it to be cause for adjustment in price. In other words, we do not want any questions raised on technicalities."

This letter also clearly indicated to the plaintiff that at the time it was written the defendant did not understand that any contract had been made by it or by any one in its behalf; on the contrary, it specifically stated that the proposition contained in Exhibit 5–A was not acceptable to it without a further proviso in reference to the percentage of lump, nut and slack coal. A proposal to accept an offer, if modified, or an acceptance subject to terms and conditions, is equivalent to the rejection of the proposition as made. Mactier's Adm'rs v. Frith, 6 Wend. (N. Y.) 103, 21 Am. Dec. 262; Chicago & G. E. R. Co. v. Dane, 43 N. Y. 240; Steamship Co. v. Mexican C. R. Co., 134 N. Y. 15, 31 N. E. 261, 17 L. R. A. 359. The reply of the plaintiff did not suggest that it then understood that the contract had been closed; on the contrary, it consented to this change in terms.

The defendant offered to prove by the testimony of Mr. Devoy, its sales agent, that at the time he signed Exhibit 5 he informed Mr. Clarkson, president of the Clarkson Coal & Dock Company, of the limitation upon his authority to contract, and that all contracts were subject to approval at the home office. The fact that Mr. Clarkson sent Exhibit 5–A, signed by him, to the home office of the defendant company, would indicate that he had knowledge that any contract made with Mr. Devoy was subject to the approval at the home office of the defendant company; otherwise no reason would appear why Exhibit 5–A was not handed directly to Mr. Devoy at the time Mr. Devoy signed and handed Exhibit 5 to the Clarkson Coal & Dock Company.

The court rejected the testimony of Mr. Devoy upon the theory that under rule 28 the execution of this contract was not a disputed question in this case. Undoubtedly that would have been a correct ruling,

had the plaintiff refrained from offering any evidence upon that subject, or if the court had rejected the evidence offered by plaintiff; but certainly the plaintiff could not voluntarily offer evidence disproving, or at least tending to disprove, the execution of the contract declared upon, and then claim the benefit of the rule relieving him from proving its execution and terms.

The evidence of Mr. Devoy was competent, and should have been received by the court; but that is not now material, for the reason that it fully appears from Exhibits 5–A, 8, and 9 that the contract was, in fact, finally negotiated by the managing officers of the Ohio & Michigan Coal Company and the Clarkson Coal & Dock Company by correspondence, and that the minds of the parties never met until the receipt of the letter of Mr. Clarkson to the defendant (Exhibit 9) consenting to the change in reference to the percentage of lump, nut, and slack coal.

While the typewritten portions of Exhibit 8 refer only to the modification in reference to the percentage of nut, lump, and slack, and the reply of the Clarkson Coal & Dock Company is confined to the same subject-matter, nevertheless the printed portions of Exhibit 8, accepting the order of the Clarkson Coal & Dock Company for this cargo of coal, sets forth at length the conditions of sale and shipment. This letter was before the Clarkson Coal & Dock Company when it wrote Exhibit 9, and it was not at liberty to ignore any of these conditions of sale so prominently brought to its attention in this letter. Each of the contracting parties having undertaken in an identical manner to inject printed conditions into the contract, neither is in a position to claim that the printed conditions in its own letters and in the letters of the other party must be wholly ignored, in determining the true terms and conditions of the contract.

The failure of the Clarkson Coal & Dock Company to object at that time to any of these printed conditions was equivalent to its assent thereto, in so far, at least, as these conditions do not conflict with any of the typewritten matter in Exhibit 8 and Exhibit 5–A. For the purpose of this case it is unnecessary to discuss any question of conflict between the several printed provisions in Exhibit 8 and the typewritten matter in Exhibit 5–A. The only one, here important, is paragraph 4, which reads as follows:

"All sales, whether price quoted f. o. b. destination or mines, are subject to delays and losses in railroad transportation and to railroad overcharges, combines and turn-outs, strikes among miners, car shortage, or any causes beyond our control."

It is apparent that there is no irreconcilable conflict between the provisions and conditions of this paragraph and the typewritten matter in any of these exhibits, and therefore the same effect must be given to the conditions printed in this paragraph as to the printed conditions in Exhibit 5–A. It follows that the trial court erred in excluding evidence in reference to delays in railroad transportation, car shortage, and other causes beyond the control of the defendant, and in directing the jury to return a verdict for some amount for the plaintiff.

[6] The defendant below offered in evidence certain letters and telegrams (Exhibits 69 to 79), all of which, except 79, were rejected by the court upon the theory that they were negotiations for a settlement of this controversy. The plaintiff naturally made no objection to the introduction of Exhibit 79, although it was subject to the same objection. In the absence of the other exhibits, it perhaps was prejudicial to the defendant; but the defendant, having offered that exhibit in evidence, cannot now complain, nor does the fact that it was admitted without objection make the other exhibits competent evidence in this case. Of course, if it had been offered by the plaintiff and received by the court, then the defendant undoubtedly would have had the right to introduce all the other exhibits in relation to this attempted settlement.

There are other questions presented by this record that, in view of the conclusions reached by this court, are not important in the disposition of this case, nor are they likely to become important upon a retrial of the same.

For the reasons above stated, the judgment of the District Court is reversed, and cause remanded for further proceedings and a new trial according to law.